UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

SECURITIES AND EXCHANGE COMMISSION,  :
100 F Street, NE                                                :
Washington, DC 20549                                      :
                                                                        :
                              Plaintiff,       :
                                                                        :
                      v.                           :
                                                                        :
RODERIC LEE BOLING, III                              :   Case No. 1:06CV01329 (RMC)
ANNA AUGUST BOLING,                                :
JEFFREY SCOTT MILLS, and                         :
DIRECT RESULTS OF SWEETWATER, LLC,  :
                                                                        :
                             Defendants.   :

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS MILLS' AND DIRECT RESULTS' MOTION TO DISMISS**

    In Support of its Motion to Dismiss, defendants Mills and Direct Results rely upon the following points and authorities.

    I.     **Introduction**

    By its action, the Commission alleges that Mr. Mills and Direct Results, apparently acting through Mr. Mills, engaged in securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.  In sum, the Commission concludes that Mr. Mills somehow was responsible for the nationwide broadcasting of a series of fraudulent voicemail messages touting the stocks of several publicly-traded companies, depending on the meaning of the conclusory allegations in the complaint.  For the alleged violations, the Commission seeks, from Mr. Mills and Direct Results, a permanent injunction, disgorgement, and an unspecified amount of civil monetary penalties.  However, the complaint is

deficient for several significant reasons, and should therefore be dismissed for the reasons explained below.

### II. **The Complaint**

#### A. The Defendants

The Complaint alleges that this "action alleges a scheme, commonly known as a 'pump and dump,' to defraud the public through the nationwide broadcasting of fraudulent voicemail messages touting the stocks of at least six small, thinly traded companies."[1]  See SEC Complaint ("*Compl.*") at ¶ 1.  The named defendants are former husband and wife, Roderic Lee Boling, III, and Anna Boling, as well as Mr. Mills and Direct Results, a Florida limited liability company that Mr. Mills controls.

#### B. The Alleged Fraud

The alleged fraud, as described in the Complaint, occurred in July and August 2004.  Allegedly, defendant Roderic Boling hired a telemarketer to place calls nationwide, using auto-dialing technology, and leave hundreds of thousands of pre-recorded false and misleading messages promoting six thinly traded stocks.  *Compl.* at ¶ 1.  The fraudulent messages, recorded by Roderic Boling's then wife, defendant Anna Boling, were intended "by defendants and others, known and unknown," to cause the messages' recipients to believe the recipient had been given a "hot" stock tip.  *Id.*  The scheme, according to the complaint, was "designed by the Defendants and others, known and unknown, acting in concert, to enable several individuals, including Mr.

---

[1] The companies included American Multiplexer Corp. ("AMUT"), Donini, Inc. ("DNNI"), 5G Wireless Communications, Inc. ("FGWC"), Innovative Food Holdings, Inc. ("IVFH"), Maui General Store, Inc. ("MAUG"), and Power3 Medical Supplies, Inc. ("PWRM").  With the exception of AMUT, which is no longer publicly traded, all the companies' common stock is publicly traded on either the OTC Bulletin Board or the Pink Sheets.

Mills; a group of Houston, Texas-based promoters; and a Tampa, Florida-based broker-dealer to profit by selling their shares at the fraudulently inflated prices." *Compl.* at ¶ 2.

    C.    Mr. Mills Specific Actions

The detailed allegations in the Complaint barely mention Mr. Mills. According to the Commission's complaint, the individuals who actually planned and executed the fraudulent voicemail campaign are as follows:[2]

> In or about mid-July 2004, defendant **Roderic Boling** contacted an Augusta, Georgia-based telemarketer ("Telemarketer") to engage his services to broadcast voicemail messages touting several stocks. **Roderic Boling** specified requirements for the voicemail campaign, including that the messages never be sent to the same number twice, that the recorded tout only be played to an answering machine or voicemail system, and that knowledge of the voicemail campaign be kept to a minimum among the Telemarketer's employees. *Compl.* at ¶ 17.

> In or about July 25 through August 18, 2004 (the "calling period"), at the direction of **Roderic Boling**, the Telemarketer broadcast Fraudulent Messages intended to deceive investors nationwide into believing that they had inadvertently been made privy to a confidential stock tip about MAUG, IVFH, FGWC, PWRM, DNNI and/or, AMUT. The messages were recorded over the phone by **Roderic Boling**'s then wife, defendant **Anna Boling**, from the Altamonte Springs, Florida home in which she resided with her then husband. *Compl.* at ¶ 18

> On or about August 19, 2004, after news of the Fraudulent Messages had spread on internet message boards, **Roderic Boling** asked the Telemarketer to continue broadcasting the Fraudulent Messages. The Telemarketer refused. In response, **[Roderic] Boling** instructed the Telemarketer to delete all the files related to the voicemail campaign from the Telemarketer's computers, including stored copies of the Fraudulent Messages. The Telemarketer subsequently stopped broadcasting the Fraudulent Messages. *Compl.* at ¶ 19.

In fact, other than the conclusory allegation that the supposed fraudulent voicemail campaign was "designed by the Defendants and others, . . . including Mr. Mills . . . to profit by

---

[2] For clarity purposes, the undersigned has highlighted the names of the alleged Defendant actors in each statement.

3

selling their shares at the fraudulently inflated prices," (*Compl.* at ¶ 2) the only specific allegations regarding Mr. Mills in the Commission's complaint are as follows:

> On or about August 31, 2004, **Roderic Boling**, the Telemarketer and **Mills** traveled together to a Gulfport, Mississippi casino. **Mills** and **Roderic Boling** planned to collect payment for the Fraudulent Messages while at the casino, and to pay the Telemarketer for his services. Once at the casino, **Mills** retrieved a duffel bag filled with cash, which he gave to **Roderic Boling**. Roderic Boling, in turn, over the course of their stay, gave the Telemarketer approximately $40,000 taken from the bag. *Compl.* at ¶ 20.

> In the summer of 2004, prior to the broadcasting of the MAUG Fraudulent Messages, Mr. Mills had agreed with another Florida-based stock promoter ("Florida Promoter") to promote MAUG in exchange for which the Florida Promoter would pay **Mills** a portion of the proceeds he realized from selling MAUG shares during the promotion. Between July 26 and August 9, 2004, while the MAUG messages were being broadcast, the Florida Promoter sold 421,600 shares of MAUG, obtaining proceeds of $315,913. On or about August 3, 2004, and August 6, 2004, **Mills** deposited checks from the Florida Promoter totaling $25,233, representing his share of the proceeds from those sales. The checks were made out to **Mills**' company, defendant **Direct Results of Sweetwater**, and were deposited into a bank account in the name of **Direct Results**. *Compl.* at ¶ 23.

> On or about August 5, 2004, a California-based promoter, who had been hired to facilitate public relations for IVFH via promotional faxes and emails, transferred 250,000 shares of IVFH to **Direct Results**. Between August 12 and August 16, while the Fraudulent Messages were being broadcast, **Mills** sold 220,000 of those shares, generating proceeds of $86,750. *Compl.* at ¶ 26.

Simply put, the Commission's allegations against Mr. Mills and Direct Results are sparse, at best, and certainly not reflective of conduct that justify the charges that the Commission has brought in its complaint.

### III.   **Argument**

#### A.   Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), a court must dismiss a complaint if the complaint fails to state a cognizable claim upon which

relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the well-pleaded factual allegations in the complaint as true, but will not accept unsupported conclusions, unwarranted inferences, or sweeping conclusions cast in the form of factual allegation.  See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2, 53 L. Ed. 2d 557, 97 S. Ct. 2490 (1977); Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004); Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)  see also In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 404 (S.D.N.Y 2001) (In ruling Rule 12(b)(6) motion to dismiss, court "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations.").

In ruling on a motion to dismiss a securities fraud action, courts not only rely upon the law governing Rule 12(b)(6), but also the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)), which provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," See Fed. R. Civ. P. 9(b).  Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brought solely for its settlement value. Shields v. Washington Bancorporation, 1992 U.S. Dist. LEXIS 4177, 1992 WL 88004, at *4 (D.D.C. Apr. 7, 1992); see also Kowal v. MCI Communications Corp., 16 F.3d 1271, 1279, 305 U.S. App. D.C. 60 n.3 (observing that Rule 9(b) aims to prevent a claim filed as a "pretext for the discovery of unknown wrongs" (citation omitted)); United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1385 n.103 (D.C. Cir. 1981), cert. den'd, 455 U.S. 999, 102 S. Ct. 1630, 71 L. Ed. 2d 865 (1982) (need for protection against allegations of fraud is most acute where the potential defendants are professionals with reputations to protect).  Finally, "conclusory allegations that a

5

defendant's actions were fraudulent and deceptive are not sufficient to satisfy 9(b)." <u>Shekoyan v. Sibley Int'l Corp.</u>, 217 F. Supp. 2d 59, 73 (D.D.C. 2003); <u>see</u> also <u>In re Rockefeller Ctr. Props. Secs. Litig.</u>, 311 F.3d 198, 216 (3d Cir. 2002) (noting that courts are not required to credit a complaint's bald assertions, legal conclusions or "legal conclusions draped in the guise of factual allegations")

It is well-settled that the Commission's status as a government agency does not eliminate its requirement to comply with the heightened pleading requirements of Rule 9(b).  <u>SEC v. Gold</u>, 2006 U.S. Dist. LEXIS 87042 at *5 (E.D.N.Y. August 18, 2006);; <u>SEC v. Blackman</u>, 2000 U.S. Dist. LEXIS 22358 (M.D.Tenn., May 26, 2000) (Commission bound by Rule 9(b) pleading requirements).  Dismissal of the Commission's complaint is appropriate when the Commission fails to meet Rule 9(b)'s requirements.  See <u>SEC v. Pimco Advisors Fund Mgmt. LLC</u>, 341 F. Supp. 2d 454, 462 (S.D.N.Y. 2004); <u>SEC v. Yuen</u>, 221 FRD 631, 634-36 (C.D.Cal. 2004) (court dismissed the Commission's complaint based on Rules 12(b)(6) and 9b where Commission failed to plead elements of fraud claim with particularity).   This is particularly appropriate since the Commission has mandatory investigative, pre-suit subpoena power.  Therefore, in order to satisfy the particularity requirement under Rule 9(b), the Commission must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent."  <u>SEC v. Apolant</u>, 411 F. Supp. 2d 271, 276 (E.D.N.Y. 2006) (internal citation omitted).  Stated differently, Rule 9(b) requires plaintiff to set forth the "who, what, where, and when" of the alleged fraud."  <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990), <u>cert. den'd</u>, 498 U.S. 941, 112 L. Ed. 2d 312, 111 S. Ct. 347 (1990).

6

In order to satisfy the heightened pleading requirements of Rule 9(b) when alleging a manipulative scheme in a securities fraud case, a plaintiff must satisfy the requirement that fraud be pled with particularity as to each individual defendant, and cannot fulfill this obligation by making vague allegations about the defendants as a unit. In re NYSE Specialists Sec. Litig., 405 F. Supp. 2d 281 (S.D.N.Y. 2005); SEC v. U.S. Envt'l, Inc., 82 F. Supp. 2d 237, 241 (S.D.N.Y. 2000) (Commission cannot satisfy Rule 9(b) specificity obligation "by making vague allegations about the defendants as a unit"). More specifically, a plaintiff "must connect each defendant with a specific misrepresentation." Stat-Tech Sec. Litig., 905 F.Supp. 1416, 1421 (D.Col. 1995).

### B. The Commission Fails to Plead with Particularity that Mr. Mills or Direct Results Engaged in Fraud

The Complaint alleges violations by Defendants Mills and Direct Results of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule l0b-5, 17 CFR § 240.10b-5, thereunder. "Section 10(b) of the Exchange act prohibits the use of manipulative or deceptive devices in connection with the purchase or sale of securities. . . Rule 10b-5 prohibits, *inter alia*, the making of an untrue statement of a material fact in connection with a securities transaction." Howard v. SEC, 376 F.3d 1136, 1141 n.2 (D.C. Cir. 2004). Stated differently, in order to adequately plead a claim for the violation of Section 10(b) and Rule 10b-5, the Commission must allege that Mr. Mills "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999). While not conceding that the Commission has adequately alleged any of the elements of a Section 10(b) and/or Rule l0b-5 violation by Mr. Mills and/or Direct Results, Mr. Mills and Direct Results direct the court's attention to the absence of the following required allegations in the Commission's complaint: (1) making a material misrepresentation or omission; and (2) scienter.

1.  Making a Material Misrepresentation or Omission

To adequately plead securities fraud under Section 10(b) and Rule 10b-5, thereunder, the Commission must allege that Mr. Mills and Direct Results "made material misrepresentations or omitted material facts necessary to clarify misleading statements." SEC v. Better Life Club of Am., Inc., 995 F. Supp. 167, 175 (citing Basic v. Levinson, 485 U.S. 224, 231, 99 L. Ed. 2d 194, 108 S. Ct. 978 (1988).

Simply stated, the Commission has not alleged that Mr. Mills "made" any material fraudulent statements or omitted material facts. Such an omission on the part of the Commission is not inconsequential, particularly since the Commission has alleged neither that Mr. Mills aided and abetted, nor controlled, the other defendants' allegedly fraudulent conduct. According to the Commission, the term "make," in the context of Rule 10b-5, is synonymous with "create." See In re Enron Corp. Sec., Derivative & "ERISA" Litig., 235 F. Supp. 2d 549, 588 (S.D. Tex. 2002) (adopting definition of "make" suggested in SEC's amicus brief). In the Enron Corp. case, the Commission suggested, and the court adopted, the following interpretation of the word "make" in Rule 10b-5: "when a person, acting alone or with others, creates a misrepresentation [upon which the investor-plaintiffs relied], the person can be liable as a primary violator . . . if . . . he acts with the requisite scienter." Id. (citing SEC Brief at 18) (emphasis added).

Even adopting an expansive definition of "make" similar to the definition adopted in Enron Corp. does not allow the Commission's allegations against Mr. Mills to meet the heightened pleading requirements of Rule 9(b), however, as the Commission's complaint does not allege that Mr. Mills "created" a single one of the allegedly fraudulent voicemail messages,

8

or that he agreed with the other defendants in this matter to profit from the same. Indeed, even amidst the complaint's sparse allegations against Mr. Mills, perhaps the most interesting factors to note is what the Commission does not allege. For instance, the Commission has made no allegations, anywhere in the Complaint, that Mr. Mills directed Anna Boling to record any "fraudulent messages," or even that Mr. Mills was aware that Anna Boling had ever recorded any "fraudulent messages" pursuant to anyone else's instructions. The Commission has also made no allegations that Mr. Mills ever hired any telemarketer to broadcast any "fraudulent messages," or even that Mr. Mills was aware that Roderic Boling had hired any telemarketer to broadcast any "fraudulent messages." Finally, the Commission has made no allegations that Mr. Mills was aware that Roderic Boling instructed the Telemarketer to delete all the files related to the voicemail campaign from the Telemarketer's computers. In short, there is absolutely no indication that Mr. Mills played any role in the creation or dissemination of any fraudulent voicemail messages.

Although this case may ultimately prove to involve a fraudulent voicemail message scheme, nowhere in the Commission's Complaint does the Commission accuse Mr. Mills of creating or making any false statement. Accordingly, under the SEC's own presented definition of a core concept of the anti-fraud provisions - the making of an untrue statement – the Commission fails to allege acts constituting a violation of the statute and rule that it alleges Mr. Mills and Direct Results violated.

    2.    <u>Scienter</u>

"The Supreme Court has clearly stated that proof of scienter is required for the Commission to show a violation of Section 10(b) or Rule 10b-5." <u>SEC v. Better Life Club of Am., Inc.</u>, 995 F. Supp. at 175 (citing <u>Aaron v. SEC</u>, 446 U.S. 680, 691, 64 L. Ed. 2d 611, 100 S.

Ct. 1945 (1980). "Scienter," means "a mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976); see also Howard v. SEC, 376 F.3d at 1142 n.2. Within the District of Columbia, scienter may be proven by a showing of recklessness, see Graham v. SEC, 222 F.3d 994, 1000 (D.C. Cir. 2000) (internal citations omitted); SEC v. International Loan Network, Inc., 770 F. Supp. 678, 694 (D.D.C. 1991), which has been defined as "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." SEC v. Enters. Solutions, Inc., 142 F. Supp. 2d 561, 573 (S.D.N.Y. 2001).

      The Commission has grossly failed to demonstrate scienter on Mr. Mills' or Direct Results' part. Perhaps most obvious, common sense dictates that since the Commission has failed to allege that Mr. Mills "made" a false statement, it has obviously not alleged that he acted with scienter in doing so. The Court need not even reach the issue of whether he was charged with making false statements with scienter if he has not been charged with making false statements in any capacity.

      In addition, the Commission has made no substantive allegations that Mr. Mills was involved in any capacity in the scheme surrounding fraudulent messages relating to FGWC, PWRM, DNNI, and AMUT. In fact, the sections of the Commission's complaint that describe the trading in those issuers' securities make no mention of Mr. Mills or Direct Results whatsoever. See Compl. at ¶¶ 27-34. The only securities that Mr. Mills had any involvement with, in any capacity, were MAUG and IVFH.

      According to the complaint, and as noted above, the Commission alleges that, in the Summer of 2004, and before the allegedly fraudulent voicemail messages regarding MAUG had been disseminated, Mr. Mills agreed with a Florida stock promoter to promote MAUG in

10

exchange for payment after the Florida stock promoter later sold shares of MAUG.  Clearly nothing in the Commission's allegations suggests that Mr. Mills and the Florida stock promoter were agreeing to any activities that differed in any way from those commonly engaged in by legitimate stock promoters.  Since nothing in the Commission's complaint suggests that Mr. Mills was aware of any fraudulent voicemail campaign, the Commission cannot have possibly adequately pled that the agreement between Mr. Mills and the Florida stock promoter was of a fraudulent nature.

The Commission's allegations regarding Mr. Mills' involvement in the securities of IVFH are equally as deficient.  According to the complaint, and as noted above, the Commission alleges that Direct Results received shares from a California-based promoter who had been hired to facilitate public relations for IVFH via promotional faxes and e-mails.  Later, according to the complaint, Mr. Mills sold a portion of the shares.  Once again, in the absence of any allegations that Mr. Mills was aware of any scheme to promote fraudulent messages regarding IVFH, Mr. Mills' sales of shares of IVFH at a time when the trading volume and share price had increased is indicative of nothing more than Mr. Mills selling shares at optimal times – when market interest in IVFH shares created an opportunity to sell.

Finally, the Commission's complaint contains no substantive allegations indicating scienter when it alleges that Mr. Mills traveled with Roderic Boling and the telemarketer to the Mississippi casino in August 2004.  First, the Commission's conclusion that "Mills and . . . Boling planned to collect payment for the fraudulent messages" is nothing more than an unsupported, "conclusory allegation" that is "not sufficient to satisfy [Rule] 9(b)."  See Shekoyan, 217 F. Supp. at 73.  The complaint's only substantive factual allegations surrounding Mr. Mills are that, while at the casino, he retrieved a duffel bag of cash and handed it to Roderic

11

Boling. Nothing in those allegations, however, suggest that Mr. Mills handing a bag of cash to Roderic Boling – in a casino, where cash is customarily used to gamble – was connected in any way to a scheme between the parties to distribute fraudulent voicemail messages. In conclusion, none of the adequately plead allegations surrounding Mr. Mills indicate any level of scienter – recklessness or otherwise – to support a violation of Section 10(b) or Rule 10b-5.

## IV.     **Conclusion**

As described above, Mr. Mills is charged with responsibility for allegedly fraudulent voicemail messages, as well as with selling shares of companies whose share price rose as a result of the dissemination of the fraudulent voicemail messages. The Commission, however, has completely failed to allege that Mr. Mills made, or was even aware that others had made, any of the voicemail messages. Further, the Commission has failed to adequately plead circumstances that would indicate that Mr. Mills or Direct Results (acting through Mr. Mills) possessed the requisite level of scienter. To meet the heightened pleading requirements of Rule 9(b) when, as here, it alleges fraud, the Commission must allege that level of detail. Since it has not, it should not be allowed to proceed in its claim against Defendants Mills or Direct Results for fraud.

WHEREFORE, Defendants Mills and Direct Results respectfully request that this court dismiss the Commission's complaint against them.

.                                                                          Respectfully Submitted,

_____
Brian W. Shaughnessy
DCB 89946
Shaughnessy, Volzer & Gagner, P.C.
913 M Street, N.W., Suite101
Washington, D.C. 20001
(202) 842-1700


Mark D. Hunter, Esq.
Mark David Hunter, P.A.
Atrium Financial Center
1515 North Federal Highway, Suite 300
Boca Raton, Florida 33432
Tel:    (561) 394-8886
Fax:    (561) 392-9901

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : |
| 100 F Street, NE | : |
| Washington, DC 20549 | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : |
| | : |
| **RODERIC LEE BOLING, III** | : Case No. 1:06CV01329 (RMC) |
| **ANNA AUGUST BOLING,** | : |
| **JEFFREY SCOTT MILLS, and** | : |
| **DIRECT RESULTS OF SWEETWATER, LLC,** | : |
| | : |
| **Defendants.** | : |

---

## ORDER

Upon consideration of the Motion to Dismiss of defendants Jeffrey Scott Mills and Direct Results of Sweetwater, LLC, any response thereto and the entire record herein, and the Court having found that there is sufficient basis for dismissing the complaint herein,

It is this _____ day of _____, 2007,

**ORDERED** that the complaint of plaintiff Securities and Exchange Commission is hereby dismissed with prejudice.

_____
**JUDGE**