**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : 06cv1329(RMC) |
| RODERIC LEE BOLING III, | : |
| ANNA AUGUST BOLING, | : |
| JEFFREY SCOTT MILLS, and | : |
| DIRECT RESULTS OF SWEETWATER, LLC, | : |
| | : |
| Defendants. | : |

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MILLS'
AND DIRECT RESULTS' MOTION TO DISMISS**

Plaintiff Securities and Exchange Commission (the "Commission" or "Plaintiff") submits this opposition to Jeffrey Scott Mills' ("Mills") and Direct Results of Sweetwater, LLC's ("Direct Results") Motion to Dismiss. In support, the Commission relies on the following points and authorities.

**INTRODUCTION**

Mills and his company, Direct Results (the "Mills Defendants") have moved to dismiss the Complaint under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity. The argument advanced by them depicts the Commission's allegations in the least favorable light, and reads the caselaw restrictively

and formalistically in an effort to defeat the well-established flexibility afforded the antifraud provisions of the Securities Exchange Act.

In its Complaint, the Commission alleges that the Mills Defendants, together with their co-defendants, engaged in a fraudulent "pump and dump" scheme. The defendants disseminated fraudulent voicemail messages to artificially inflate the prices of at least six small, thinly traded stocks, enabling the Mills Defendants and others to profit from trading at the artificially inflated prices. The messages (the "Fraudulent Messages") were intended to cause each of hundreds of thousands of recipients to believe that he or she had mistakenly been given a "hot" stock tip intended for a friend of the caller.

It is a reasonable inference to draw from the allegations of the Complaint that Mills was intimately involved in the chain of acts and transactions which created, disseminated, and paid for the Fraudulent Messages. He was hired to tout MAUG and, as part of that arrangement, received a cut of the proceeds from the sale of MAUG stock while the Fraudulent Messages were being broadcast. Compl. at ¶ 23. He received shares of another of the touted companies, IVFH, from another promoter and sold those shares while the Fraudulent Messages were being broadcast. Compl. at ¶ 26. In late August 2004, after the Fraudulent Messages had been broadcast, Mills traveled to a Gulfport casino where he delivered a duffle bag of cash to co-defendant Roderic Boling for Boling's role in the scheme. Compl. at ¶ 20. Ultimately, on the basis of these specific allegations, the Complaint alleges that the Mills Defendants, together with their co-defendants, designed the Fraudulent Message scheme intending that each of the recipients be deceived by the Fraudulent Messages, thereby generating artificial trading

activity, enabling Mills to profit from the scheme by selling at fraudulently inflated prices. Compl. at ¶¶ 1- 2.

The Complaint describes each of the Fraudulent Messages in detail, providing a transcript of each call and dates on which it was broadcast, and alleges in detail the effect each Fraudulent Message had on the market for the related stock. Compl. at ¶¶ 21-34. The Mills Defendants cannot be in any doubt as to the specific nature of the fraudulent scheme with which they are charged, and the Complaint provides them sufficient detail to enable the formulation of responsive pleadings denying or defending those charges.

## ARGUMENT

The antifraud provisions of the Securities Exchange Act of 1934—Section 10(b) and Rule 10b-5—are broad and inclusive, and, in order to effect the purpose of avoiding fraud, are meant to be construed flexibly, not technically or restrictively. Affiliated Ute Citizens v. United States, 406 U.S. 128, 151 (1972). In ruling on a motion to dismiss under Rule 12(b)(6), a court must read the complaint "in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." In re UMW Emple. Benefit Plans Litig., 854 F. Supp. 914, 915 (D.D.C. 1994). A court should not grant such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sibley v. Breyer, 456 F. Supp. 2d 43 (D.D.C. 2006) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The Commission alleges that the Mills Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Rule 10b-5 makes it unlawful for persons:

(a) To employ any device, scheme, or artifice to defraud,

3

    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of a security.

The Mills Defendants contend that the Complaint fails to sufficiently allege or particularly plead a case against them under 10b-5(b).[1]

### 1. The Commission Pleads Fraud with Particularity against the Mills Defendants under 10b-5(b)

#### a. The Complaint Alleges that the Mills Defendants Made Material Misstatements

The Mills Defendants incorrectly contend that the Commission fails to allege that they made any material misstatements as required under Rule 10b-5(b). They rely upon caselaw explaining that a person makes a misrepresentation when he "creates" it, "acting alone or with others." Mills Defendants' Mot. at 8 relying on In re Enron Corp. Secs., 235 F. Supp. 2d 549, 588 (D. Tex. 2002). The Commission's Complaint alleges that the Mills Defendants, acting with others, designed the Fraudulent Message scheme, intending that each of the recipients be deceived by the Fraudulent Messages, thereby generating artificial trading activity, and enabling Mills, and others to sell at fraudulently inflated prices. Compl. at ¶¶ 1-2. These allegations are supported by specific allegations that Mills i) was hired to tout MAUG and, as part of that arrangement, received a cut of the proceeds from the sale of MAUG stock while the Fraudulent Messages were being broadcast, Compl. at ¶ 23; ii) received shares of another of the touted companies, IVFH, from another promoter and sold those shares while the Fraudulent Messages were being

---

[1] The Mills Defendants' Motion generally contends that the Commission fails to state a claim under Rule 10b-5, but does not distinguish among subsections (a), (b), and (c) of the Rule. The Motion only specifically addresses 10b-5(b). However, since the motion is general, the Commission also addresses 10b-5(a) and (c) below.

4

broadcast, Compl. at ¶ 26; and iii) after the Fraudulent Messages had been broadcast, traveled to a Gulfport casino where he delivered a duffle bag of cash to co-defendant Roderic Boling for Boling's role in the scheme.  Compl. at ¶ 20.  The reasonable inference to draw from these specific allegations is that Mills, directly and through his company, Direct Results, was paid for creating, and, acting with the other defendants, placing the Fraudulent Messages in the marketplace.

At the heart of the alleged fraud was the defendants' effort to make their fraudulent statements anonymously, intending to convince call recipients that the Fraudulent Messages were from a fictitious "Debbie," "Renee," or "Lisa" and intended for a friend, rather than from the defendants and intended for hundreds of thousands of recipients.  It would be inconsistent with the preventative purpose of the Exchange Act to permit defendants to avoid liability by concealing their authorship of fraudulent statements and subsequently complaining that their authorship was not sufficiently clear at the pleading stage.  In re Global Crossing, Ltd. Securities Litigation, 322 F. Supp. 2d 319, 333 (S.D.N.Y. 2004)(noting that a "strict requirement" that alleged misstatements be publicly attributable to a defendant "would allow those primarily responsible for making false statements to avoid liability by remaining anonymous, and thus would place a premium on concealment and subterfuge rather than on compliance with the federal securities laws" (internal quotation marks omitted)).[2]

---

[2] The Mills Defendants urge that dismissal under Rules 12(b)(6) and 9(b) "is particularly appropriate since the Commission has mandatory investigative, pre-suit subpoena power."  Mills Defendants' Mot. at 6.  During the Commission's investigation, Mr. Mills, and co-defendants Anna and Roderic Boling, were each subpoenaed to testify and each exercised his privilege under the Fifth Amendment, declining to answer any and all substantive questions related to the Fraudulent Messages.

b. <u>The Complaint Alleges that the Mills Defendants Acted with Scienter</u>

Scienter, an element of the Commission's claim, embodies a mental state involving the intent to deceive, manipulate, or defraud, and may be demonstrated by a showing of recklessness. <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S. 185, 193 n. 12 (1976) and <u>Graham v. SEC</u>, 222 F. 3d 994, 1000 (D.C. Cir. 2000). Mills was intimately involved in the chain of acts and transactions which created, disseminated, and paid for the Fraudulent Messages. The Fraudulent Messages, by their nature, conceal the true identity and intention of the speaker. It is a reasonable inference to draw from this fact that those responsible for the Fraudulent Messages, including the Mills Defendants, created and placed them with the requisite intent to deceive or manipulate. The Complaint, furthermore, explicitly avers that the Mills Defendants intended the Fraudulent Messages to achieve a fraudulent purpose. Compl. at ¶ 1.

c. <u>The Fraud is Plead with Particularity as Required by Rule 9(b)</u>

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure provides that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Under the Rule, scienter "may be averred generally."

Rule 9(b) requires the plaintiff to "plead the who, what, when, where, and how" of the fraud. <u>Burman v. Phoenix Worldwide Indus.</u>, 384 F. Supp. 2d 316, 325 (D.D.C. 2005)(internal quotation marks omitted). In this Circuit, a plaintiff satisfies the Rule by pleading the "time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud." <u>Zandford v. NASD</u>, 19 F. Supp. 2d 4, 9 (D.D.C. 1998) citing <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1278 (D.C. Cir. 1994). The particularity

6

requirement of Rule 9(b) aims to prevent strike suits brought solely for settlement value and unsubstantiated claims compromising the reputation of a defendant, Burman at 325, and is meant to "guarantee all defendants sufficient information to allow for preparation of a response." United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1385 (D.C. Cir. 1981).

The Commission has met the standard under the Rule. The Complaint describes each of the Fraudulent Messages in detail, giving the content of each, the stocks they touted, and the dates on which they were broadcast. The Complaint describes the falsity of the Fraudulent Messages by explaining that they were intended to make hundreds of thousands of recipients into falsely believing that they had mistakenly received a stock tip meant for a friend of the caller. The Complaint further identifies compensation and trading proceeds that were obtained by the Mills Defendants as a consequence of the fraud. Finally, the Complaint satisfies the policy behind Rule 9(b) by providing sufficient detail to enable the Mills Defendants to prepare a response and to assure the Court that the suit is not an improper nuisance or strike suit.

> **2. The Commission Pleads Fraud with Particularity against the Mills Defendants under 10b-5(a) and (c)**

Subsections (a) and (c) of Rule 10b-5 contemplate fraud claims that are not limited to allegations of false or misleading statements. Affiliated Ute Citizens at 153. Claims under 10b-5(a) or 10b-5(c) survive a motion to dismiss where plaintiffs allege that the defendants i) in connection with the purchase or sale of securities; ii) used deceptive or manipulative conduct to control or artificially affect a market for securities; and iii) engaged in the manipulative conduct with scienter. In re Global Crossing, Ltd.

7

Securities Litigation, supra, 322 F. Supp 2d at 329 (omitting criteria not applicable to Commission actions[3]).

The Commission's Complaint meets each of the relevant criteria. The Commission has alleged that the Fraudulent Messages were part of a fraudulent scheme to inflate the trading volume and market price of the touted securities in order to enable Mills and others to sell those securities at artificial prices. Compl. at ¶¶ 1-2. The Commission alleges with specificity the inflationary effect the Fraudulent Messages had on the markets for each of the securities. Compl. at ¶ ¶ 3, 22, 25, 28, 30, 32 & 34. The Complaint alleges the defendants' fraudulent intent. Compl. at ¶ 1. Finally, the Complaint unambiguously alleges that the Mills Defendants profited from the sale of and sold securities during the pump as part of the fraud.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss should be denied.

Dated: January 22, 2007

                                    Respectfully submitted,
                                    /S
                                  Alan M. Lieberman,
                                  Assistant Chief Litigation Counsel
                                  David C. Rice
                                  Andrea Bellaire
                                  Attorneys for Plaintiff
                                  SECURITIES AND EXCHANGE COMMISSION
                                  100 F St. NE
                                  Washington DC 20549

---

[3] The criteria not relevant in a Commission action are i) that the plaintiff allege he was injured, ii) by relying on a market for securities.