UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br> 100 F Street, NE <br> Washington, DC 20549 <br><br>                        **Plaintiff,** <br><br>                 v. <br><br> RODERIC LEE BOLING, III <br> ANNA AUGUST BOLING, <br> JEFFREY SCOTT MILLS, and <br> DIRECT RESULTS OF SWEETWATER, LLC, <br><br>                        **Defendants.** | Case No. 1:06CV01329 (RMC) |

---

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS MILLS' AND DIRECT RESULTS' MOTION TO DISMISS

Defendants Jeffrey Scott Mills ("Mr. Mills") and Direct Results of Sweetwater, LLC ("Direct Results"), by and through their undersigned attorneys, hereby submit this Reply Memorandum in Support of their Motion to Dismiss plaintiff Securities and Exchange Commission's (the "Commission's") Complaint. In support of the same, Mr. Mills and Direct Results state the following.

    **I.**    **Background**

The Commission filed its Complaint against Mr. Mills and Direct Results, amongst others, on approximately July 25, 2006. Mr. Mills and Direct Results filed their Motion to Dismiss and supporting Memorandum of Points and Authorities ("Supporting Memorandum") on approximately December 28, 2006, for the Commission's failure to state a claim upon which

relief can be granted and for failure to plead fraud the with requisite particularity, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. On approximately January 22, 2007, the Commission filed its Memorandum in Opposition to Defendants Mills' and Direct Results' Motion to Dismiss ("Commission's Opposition"), arguing that it has stated a claim upon which relief can be granted and has plead fraud with the requisite particularity.

**II.      Argument**

In the Commission's Opposition, the Commission alleges that Mr. Mills' and Direct Results' Supporting Memorandum "depicts the Commission's allegations in the least favorable light . . ." See *Commission's Opposition* at 1. Interestingly enough, and to avoid the Commission being able to advance such an argument, the Supporting Memorandum restated the Commission's allegations against Mr. Mills and Direct Results by borrowing the Commission's language directly from its Complaint. See *Supporting Memorandum* at 4. Mr. Mills and Direct Results question how using the Commission's own language can be depicting its "allegations in the least favorable light," and submit that, even under the standards articulated in the Commission's Opposition, the Commission has failed to meet the applicable pleading requirements.

In its Complaint, the Commission alleged that Mr. Mills was hired by a Florida-based stock promoter to promote MAUG, and received compensation for the promotion activities. *Compl.* at 23. The Complaint also alleges that Mr. Mills received shares of IVFH from a California-based stock promoter, and later sold a portion of those shares. *Compl.* at 26. However, the Commission's Complaint does not allege that either the Florida-based stock promoter or the California-based stock promoter had any involvement with the fraudulent

scheme, and does not charge either with any violations of the federal securities laws. Finally, the Complaint alleges that Mr. Mills traveled to a casino with Defendant Roderic Boling, and gave Defendant Boling a duffel bag of cash while the two were at the casino.[1] The Commission now alleges that "[i]t is a reasonable inference to draw from the allegations of the Complaint that Mills was intimately involved in the chain of acts and transactions" surrounding the alleged fraudulent voicemail scheme. *Commission's Opposition* at 2. However, nothing in the Commission's Complaint suggests that Mr. Mills or Direct Results was involved in any way – much less "intimately involved" – with any fraudulent voicemail scheme.

### A.     The Complaint Alleges No Material Misstatements by Mills or Direct Results

In the Commission's Opposition, it restates its allegation that Mr. Mills and Direct Results made material misstatements. *Id.* at 4. Immediately afterwards, however, it simply restates Mr. Mills' activities relating to MAUG and IVFH, and his casino trip with Defendant Boling. Simply stated, no where in the Commission's Complaint or in the Commission's Opposition does it allege that Mr. Mills or Direct Results "made" or "created" any fraudulent statement. The Commission is advancing a position that its Complaint simply does not support.

In a futile attempt to add legal support to its unsupportable position, the Commission cites In re Global Crossing, Ltd. Securities Litigation, 322 F. Supp. 2d 319 (S.D.N.Y. 2004), to support the proposition that alleged misstatements do not to have to be publicly attributable to a defendant. See *Commission's Opposition* at 5. According to the Commission, such a requirement "would allow those primarily responsible for making false statements to avoid liability by remaining anonymous[.]" *Id.* (citing In re Global Crossing, 322 F. Supp. 2d at 333

---

[1] As noted in the Supporting Memorandum, the Commission's allegation that Mr. Mills and Defendant Boling "planned to collect payment for the fraudulent messages" is clearly an unsupported, "conclusory allegation" that is insufficient to satisfy the heightened pleading requirements of Rule 9(b). See *Supporting Memorandum* at 11.

3

(emphasis added)).  In Global Crossing, the plaintiffs alleged that an auditor helped an issuer create false and misleading press releases, as well as numbers to be included in the issuer's false and misleading financial statements.  Id. at 325.  The court eventually held that the plaintiffs' allegations regarding the auditor's heavy involvement in the preparation of the false statements was "sufficient to raise a reasonable inference . . . that [the auditor] was one of the "makers" of the [fraudulent] statements."  Id. at 334.  As noted in Mr. Mills' and Direct Results' Supporting Memorandum, the Commission does not allege that Mr. Mills or Direct Results "created" a single fraudulent voicemail message, that either directed another person to create a single fraudulent voicemail message, that either agreed with the other defendants in this matter to profit from any fraudulent voicemail messages, or that either was even aware that a fraudulent voicemail campaign existed.  See *Supporting Memorandum* at 8-9.  Simply put, none of the factors the Global Crossing court indicated were material to its determination are present in this matter.  Accordingly, the Commission's reliance on Global Crossing is misplaced and does nothing to add support to its position in this matter.[2]

B.   **The Complaint Alleges No Scienter by Mills or Direct Results**

In the Commission's Opposition, it restates its allegation that Mr. Mills and Direct Results acted with scienter.  See *Commission's Opposition* at 6.  It then restates its allegation that Mr. Mills "was intimately involved in the chain of acts and transactions which created, disseminated, and paid for the Fraudulent Messages[,]" while apparently not recognizing that it has alleged nothing relating to the creation or dissemination of any fraudulent messages that can be attributed to Mr. Mills and/or Direct Results.  In the face of the obvious deficiencies in the

---

[2] Interestingly enough, even the Global Crossing court acknowledged that allegations that are "vague and conclusory . . . would not sustain a claim . . . under [Section 10(b) of the Securities Exchange Act of 1934]."  Id. at 333.

4

Commission's Complaint, its empty assertion that its Complaint sufficiently pleads scienter is as deficient as the Complaint itself.

### C. The Fraud is Not Plead with Particularity as Required by Rule 9(b)

In the Commission's Opposition, it asserts that it has plead fraud by Mr. Mills and Direct Results with particularity as required by Rule 9(b).  See *Commission's Opposition* at 6.  After briefly describing the standard for compliance with Rule 9(b), the Commission contends that it has met the standard because its complaint "describes each of the fraudulent messages in detail," as well as "the falsity of the fraudulent messages."  Even assuming that the Commission's Complaint described each of the fraudulent messages in detail, as well as their falsity, the Complaint failed to show any connection whatsoever between Mr. Mills and/or Direct Results and the fraudulent messages.  Nothing in the Commission's Opposition cures that fatal deficiency.

The Commission further contends that its Complaint "identifies compensation trading proceeds that were obtained by [Mr. Mills and Direct Results] as a consequence of the fraud." *Commission's Opposition* at 7.  In this instance, the Commission's contention is simply not supported by its Complaint, which only alleges that Mr. Mills received monetary payments and shares from two stock promoters that the Commission does not allege were involved in any way in any fraudulent scheme.  See *Compl.* at 23, 26.  Simply put, the Commission's Complaint alleges no other compensation to Mr. Mills, and its assertion that its Complaint identifies compensation obtained "as a consequence of the fraud" is completely without support.

**D.     The Commission Does Not Plead Fraud with Particularity Under 10b-5(a) and (c)**

In a "last ditch" attempt to resuscitate its deficient Complaint, the Commission asserts that its Complaint meets the pleading requirements associated with Subsections (a) and (c) of Rule 10b-5, which contemplate fraud claims that are not limited to allegations of false or misleading statements. *Commission's Opposition* at 7. In support of its position, the Commission relies upon Affiliated Ute Citizens v. United States, 406 U.S. 128 (9172). Mr. Mills and Direct Results note that, in Affiliated Ute Citizens, the Supreme Court held that defendants may still violate Rule 10b-5 if they conduct a "course of business" or a "device, scheme, or artifice" that operates as a fraud upon plaintiffs, even when the defendants do not make an untrue statement of material facts. Id. at 153 (internal citation omitted). In this matter, however, even assuming that the Commission has adequately plead the existence of a scheme to defraud with regards to the other defendants, it has failed to connect Mr. Mills and/or Direct Results with the same – as subsections (a) and (c) of Rule 10b-5 require – in a manner sufficient to satisfy Rule 9(b)'s heightened pleading requirements. "[B]y making vague allegations about the defendants as a unit," as the Commission has done in its Complaint, the Commission has failed to satisfy Rule 9(b)'s specificity obligation with respect to Mr. Mills and Direct Results. See *Supporting Memorandum* at 7.

WHEREFORE, based upon Mr. Mills' and Direct Results' Motion to Dismiss and Supporting Memorandum, as well as the arguments herein, they respectfully request that the Commission's Complaint in this matter be dismissed, and that Mr. Mills and Direct Results' be awarded costs and attorneys' fees and such other relief as the court deems just and proper.

Dated: January 25, 2007

.
                                          Respectfully Submitted,


                                          _____/s/_____
                                          Brian W. Shaughnessy
                                          DCB 89946
                                          Shaughnessy, Volzer & Gagner, P.C.
                                          913 M Street, N.W., Suite101
                                          Washington, D.C. 20001
                                          (202) 842-1700

                                          - and -

                                          Mark D. Hunter, Esq.
                                          Mark David Hunter, P.A.
                                          Atrium Financial Center
                                          1515 North Federal Highway, Suite 300
                                          Boca Raton, Florida 33432
                                          Tel:   (561) 394-8886
                                          Fax:   (561) 392-9901