## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 06-1329 (RMC) |
| RODERIC LEE BOLING III, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

The Securities and Exchange Commission ("SEC") complains that Roderic Lee Boling, III, Anna August Boling, Jeffery Scott Mills, and Direct Results of Sweetwater, LLC, engaged in a "pump and dump" scheme by way of nationwide broadcasting of fraudulent voicemail messages in 2004 and thereby violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. Jeffrey Mills and Direct Results of Sweetwater, LLC ("Mills Defendants") move to dismiss the SEC's Complaint for failure to state a claim upon which relief can be granted and for failure to plead fraud with the requisite particularity, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. The Mills Defendants proffer an overly-stingy reading of the SEC's Complaint. Their motion will be denied.

### I. BACKGROUND FACTS

The Mills Defendants accurately quote the paragraphs in the Complaint that outline the telemarketing scheme allegedly engaged in by the Bolings and the three paragraphs that name the Mills Defendants specifically. *See* Mem. of Points and Authorities in Supp. of Defendants

Mills' and Direct Results' Mot. to Dismiss ("Mills Mem.") at 3-4.   They argue that the Complaint against them fails to plead fraud with particularity and fails to allege sufficiently that (i) the Mills Defendants made material misstatements or omissions of fact; (ii) the Mills Defendants acted with the requisite scienter; and (iii) the Mills Defendants had involvement in the underlying scheme of the other Defendants. *See* Defendants Mills' and Direct Results' Mot. to Dismiss [Dkt. #8].

A description of the Complaint allegations may put this issue in perspective.

•        ¶ 1 alleges a scheme to defraud the public through the nationwide broadcasting of fraudulent voicemail messages touting the stocks of at least six small, thinly-traded companies.   It alleges that Roderic Boling hired a Telemarketer to place the messages, recorded by Roderic Boling's then wife, defendant Anna Boling.

•        ¶ 2 alleges that the "scheme was designed by the Defendants and others . . ., acting in concert, to enable several individuals, including defendant Mills . . . to profit by selling their shares at the fraudulently inflated prices."

•        ¶ 3 alleges that the calls were successful–noting that the trading value of touted stocks was increased by approximately 1,500%.

•        ¶¶ 4-10 identify the parties and establish venue and jurisdiction.

•        ¶¶ 11-16 identify the relevant small thinly-traded companies (American Multiplexer Corporation ("AMUT"), Donini, Inc. ("DNNI"), 5G Wireless Communications, Inc. ("FGWC"), Innovative Food Holdings, Inc. ("IVFH"), Maui General Store, Inc. ("MAUG"), and Power3 Medical Products, Inc. ("PWRM")).

•        ¶ 17 alleges that Mr. Boling contacted the Telemarketer in July 2004 to set up the campaign.

- ¶ 18 alleges that the Telemarketer, at the direction of defendant Roderic Boling, broadcast voice messages concerning the thinly-traded companies, as recorded by Mrs. Boling.

- ¶ 19 alleges that the Telemarketer ceased broadcasting after the scheme became the subject of Internet chat.

- ¶ 20 alleges that Mr. Boling, the Telemarketer, and Mr. Mills traveled together to a Mississippi casino, where Mr. Mills retrieved a duffle bag filled with cash, which he gave to Mr. Boling, and from which Mr. Boling took approximately $40,000 over a period of days to pay the Telemarketer.

- ¶¶ 21-22 allege the broadcast of fraudulent messages concerning Maui General Store, Inc. and the short-lived increase in trading and value of its stock.

- ¶ 23 alleges that Mr. Mills had agreed with a Florida Promoter to promote MAUG in the summer of 2004, prior to any broadcasting of messages concerning MAUG stock, and that Direct Results received payments representing a percentage of the profits made by the Florida Promoter selling MAUG stock during the broadcast period.

- ¶¶ 24-25 allege similar broadcasting activity and success relating to the stock listed as IVFH.

- ¶ 26 alleges that a California Promoter, who had been hired to promote IVFH via faxes and emails, transferred 250,000 shares to Direct Results on the day before the voicemail broadcasts about IVFH started. The paragraph also alleges that Mr. Mills sold 220,000 of those shares during the broadcast period, generating proceeds of

$86,750.

- •    ¶¶ 27-34 allege similar broadcasting activity and success relating to FGWC, PWRM, DNNI, and AMUT stock respectively.

- •    ¶¶ 36-37 allege that all Defendants intentionally engaged in acts of fraud in violation of §10(b) of the Exchange Act and Rule 10b-5.

- •    ¶ 38 re-alleges all prior allegations.

- •    ¶ 39 alleges that Mr. Boling, Mr. Mills and Direct Results intentionally engaged in acts of fraud in connection with the purchase or sale of securities.

- •    ¶¶ 40-41 allege that Mrs. Boling was an aider and abetter.

*See generally* Compl. at 1-14.

## II.  LEGAL STANDARDS

Rule 9(b) requires that a pleader state with particularity the circumstances constituting fraud or mistake.  FED. R. CIV. P. (9)(b).  "Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects against a strike suit brought solely for its settlement value." *In re U.S. Office Prod. Sec. Litig.*, 326 F. Supp. 2d 68, 73 (D.D.C. 2004).  Thus, because Rule 9(b) is "chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters such as the time, place and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." *Id*. (citing *United States ex rel. Totten v. Bombardier Corp*., 286 F.3d 542, 551-52 (D.C. Cir. 2002)).  Accordingly, the plaintiffs must plead the "who, what, when, where, and how" with respect to the circumstances of the fraud. *Burman v. Phoenix Worldwide Indus., Inc*., 384 F.

Supp. 2d 316, 325 (D.D.C. 2005) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

Rule 9 requires more than "pleadings [based] on information and belief," but rather "require[s] an allegation that the necessary information lies within the defendant's control" and "such allegations must also be accompanied by a statement of the facts upon which the allegations are based." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279 n. 3 (D.C. Cir. 1994). Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirement that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct. *See In re U.S. Office Prod. Sec. Litig.*, 326 F. Supp. 2d at 74. On the other hand, Rule 9(b) requires the pleader to provide a higher degree of notice by adequately alleging all the elements for the cause of action. *Id*. Finally, "[c]onclusory allegations that a defendant's actions were fraudulent and deceptive are not sufficient to satisfy 9(b)." *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 73 (D.D.C. 2002).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court must construe the allegations and facts in the Complaint in the light most favorable to the Plaintiff and must grant the Plaintiff the benefit of all inferences that can be derived from the alleged facts. *See Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal*, 16 F.3d at 1276). The Complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *See Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003); Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). The facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In deciding a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt, v. Chao*, 226 F. Supp. 2d at 196 (D.D.C. 2002) (citation omitted).

### III.  STATUTORY BACKGROUND

Section 10(b) makes it unlawful "[t]o use or employ in connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." *See* 15 U.S.C. § 78j(b). Rule 10b-5 is § 10(b)'s implementing regulation, and it provides that it is unlawful, in the connection with the purchase or sale of securities,

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

-6-

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5; *see also Burman v. Phoenix Worldwide Indus.*, 384 F. Supp. 2d 316, 326 (D.D.C. 2005) (Rule 10b-5 "prohibit[s] fraudulent activities in connection with securities transactions."(citing *Novak v. Kasaks*, 216 F.3d 300, 305 (2d Cir. 2000)).   To state a claim for securities fraud under Rule 10b-5, a plaintiff must allege that the defendant i) in connection with the purchase or sale of securities; ii) used deceptive or manipulative conduct to control or artificially affect a market for securities; and iii) engaged in the manipulative conduct with scienter[1]. *In re Global Crossing, Ltd. Securities Litgation*, 322 F. Supp. 2d 319, 329 (omitting criteria not applicable to Commission actions[2]); *see also SEC v. Monarch Funding Corp*. 192 F.3d 295, 308 (2d Cir. 1999) (Commission must allege that defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities.").

---

[1] "The Supreme Court has clearly stated that proof of scienter is required for the Commission to show a violation of Section 10(b) or Rule 10b-5." *SEC v. Better Life Club of America, Inc.*, 995 F. Supp. 167, 175 (D.D.C. 1998) (citing *Aaron v. SEC*, 446 U.S. 680, 691 (1980)).   The Supreme Court recently ruled in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, that the inquiry is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, No. 06-484, 2007 WL 1773208, at *9 (June 21, 2007).   The Court further instructed that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id*. at *10.   A complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

[2] The criteria not relevant in a Commission action are i) that the plaintiff allege he was injured, ii) by relying on a market for securities.

## IV. ANALYSIS

In their dismissal motion, the Mills Defendants claim that "[t]he complaint should be dismissed for failure to plead fraud with particularity," and that "[t]he complaint should be dismissed for failure to state a claim upon which relief can be granted because it fails to allege sufficiently that a) the defendants made material misstatements or omissions of fact, b) the defendants acted with the requisite scienter, and c) the defendants had involvement in the underlying scheme of the other defendants." *See* Mills' Mot. at 1. The outline of the Complaint allegations above makes clear that the Bolings are alleged to be the primary actors in the alleged scheme. The Mills Defendants, however, are also sufficiently alleged to have knowingly participated and profited. The Court reads the Complaint "in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *In re UMW Emple. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

### a.    Involvement in the Underlying Scheme

First, ¶ 20 alleges that after the voicemail broadcasts ceased, Mr. Mills accompanied Mr. Boling and the Telemarketer to a Mississippi casino – a place from which one could return with surprising amounts of cash attributed to lawful winnings. Second, Mr. Mills allegedly retrieved a duffel bag containing large amounts of cash, from which Mr. Boling paid the Telemarketer $40,000. Third, the group allegedly remained at the casino for a matter of days, which might have been to hide the origin of the cash payment and certainly suggests joint action. The Court, at this point, has no evidence before it and does not make any findings of any kind. However, when reading the Complaint in a manner favorable to the non-movant SEC, the Court cannot say that its allegations are legally insufficient or that proof of them could not cause a juror to conclude that Mr. Mills was

a knowing participant in the pump-and-dump scheme, at a level high enough to be in on the final payments to the Telemarketer.

Similarly, ¶¶ 21-23 allege that Mr. Mills agreed to promote the MAUG stock, that soon thereafter, MAUG was touted on voicemail messages left across the country by the Telemarketer, that MAUG stock increased dramatically in value, and that the Florida Promoter paid Mr. Mills a percentage of his profit. Paragraphs 24-26 allege a fraudulent scheme to pump up IVFH stock, immediately prior to which a California Promoter transferred IVFH stock to Direct Results, which Mr. Mills sold for a profit during the broadcast period.  When reading the Complaint in a manner favorable to the non-movant SEC, the Court cannot say that these allegations are legally insufficient or proof of them could not cause a juror to conclude that Mr. Mills was a knowing participant in the pump-and-dump scheme.

The Court notes that Rule 10b-5

> declares that, in connection with the purchase or sale of any security, it shall be "unlawful for any person, directly or indirectly," (1) "To employ any device, scheme, or artifice to defraud," (2) "To make any untrue statement of a material fact" or to omit to state a material fact so that the statements made "in the light of the circumstances," are misleading, and (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."
>
> These proscriptions, by statute and rule, are broad and, by repeated use of the word "any," are obviously meant to be inclusive. . . . Congress intended securities legislation enacted for the purpose of avoiding frauds to be construed "not technically and restrictively, but flexibly to effectuate its remedial purposes."

*Affiliated Ute Citizens of Utah v. United States*, 405 U.S. 128, 151 (1972) (quoting *SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 195 (1963)).  The Mills Defendants would read the paragraphs which mention them out of the context of the entire Complaint and thus appear to divorce

their alleged participation in the pump-and-dump scheme from its alleged connection to the Bolings. *But see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, No. 06-484, 2007 WL 1773208, at *9 (June 21, 2007) (prescribing that courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on a Rule 12(b)(6) motion to dismiss a § 10(b) action). These allegations are specific and identifiable, allowing the preparation of a defense. *See In re U.S. Office Prod. Sec. Litig.*, 326 F. Supp. 2d at 74.

      **b.**    **Scienter**

      The Complaint explicitly alleges that the Mills Defendants intended the voicemail broadcasts to achieve a fraudulent purpose.  Compl. ¶ 1.  The Complaint further alleges that Mr. Mills was involved in a convoluted process by which the Telemarketer was paid; that he was hired to promote MAUG, that MAUG was promoted by voicemail broadcasts, and that he was paid a percentage of the profits from sales of fraudulently inflated MAUG stock; and that Direct Results received 250,000 shares of IVFH stock on the day before its promotion by voicemail broadcasts started, from which Mr. Mills made a handsome profit selling fraudulently inflated stocks. "Scienter," means "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976).  Inasmuch as the broadcast voicemails used false names and false information pretending to leave a "hot tip" for a friend, all of the facts alleged, taken collectively, give rise to a strong inference of an intent to deceive, manipulate or defraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, No. 06-484, 2007 WL 1773208, at *9 (June 21, 2007). The allegations that Mr. Mills participated with Mr. Boling in the pay-off to the Telemarketer and that he personally profited from the sale of fraudulently inflated stock suffice to make out allegations that the Mills Defendants acted with the necessary scienter.

-10-

c.    **Pleading Fraud with Particularity**

Additionally, the Mills Defendants attack the Complaint as lacking the particularity required by Rule 9(b) in pleading fraud.  As stated above, Rule 9(b) of the Federal Rules of Civil Procedure provides that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."  The Complaint satisfies the Rule.  It describes the broadcast voicemails in detail; giving the content of each, the stocks they touted, and the dates on which they were broadcast.  The Complaint describes the falsity of the voicemails and identifies the compensation and trading proceeds that were obtained by the Mills Defendants as a consequence of the fraud.  The Mills Defendants argue that only the Bolings are alleged to have "created" the voicemails and that the Mills Defendants are not, so there is insufficient particularity.  *But see Affiliated Ute Citizens*, 405 U.S. at 153 (Subsections (a) and (c) of Rule 10b-5 contemplate fraud claims that are not limited to allegations of false or misleading statements).   To the contrary, the Complaint alleges that the Mills Defendants acted in concert with the Bolings in the alleged scheme to manipulate or artificially affect the market for securities, while profiting from the sale of those securities.  This is exactly what Rule 9(b) requires.  *See In re Global Crossing, Ltd. Securities Litigation*, 322 F. Supp. 2d at 329.

## V.  CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's complaint is sufficient to survive the Defendants' Motion to Dismiss.  Accordingly, the Court will deny the Defendants' Motion to Dismiss [Dkt. #8].

A separate Order accompanies this Memorandum Opinion.

-11-

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: July 13, 2007