# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RODERIC LEE BOLING III,<br>ANNA AUGUST BOLING,<br>JEFFREY SCOTT MILLS, and<br>DIRECT RESULTS OF SWEETWATER, LLC,<br><br>Defendants. | Case No.: 06CV1329 (RMC) |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPPLICATION FOR FINAL JUDGMENT BY DEFAULT AS TO DEFENDANT RODERICK LEE BOLING III

This memorandum is submitted in support of Plaintiff Securities and Exchange Commission's (the "Commission") Application for Entry of Final Judgment by Default Against Defendant Roderic Lee Boling III (the "Defendant") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The facts supporting this Application are set forth in this Memorandum and the supporting Declaration of Andrea Bellaire.

## **RELEVANT HISTORY OF THE CASE**

The Commission filed its Complaint in this action on July 27, 2006. (Civil Docket #1). On November 11, 2006, service of the Complaint and Summons was made on the Defendant within the provisions of Federal Rule of Civil Procedure 4(e)(2) and the District of Columbia's personal jurisdiction statute. (October 19, 2007 Declaration of Andrea Bellaire is appended hereto at ¶ 4) (hereinafter "Bellaire Dec."). The Commission's Complaint was filed contemporaneously with a related criminal matter, *United States of America v. Jeffrey S. Mills, Roderic L. Boling and Anna Boling*, 06CR228 (ESH) (July 27, 2006), (the "Criminal Action"). (Bellaire Dec. at ¶ 7). On July 3, 2007, the Defendant entered a plea of guilty before the Honorable Ellen S. Huvelle to conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and securities fraud in violation of 15 U.S.C §§ 78j(b) and 78ff. (Bellaire Dec. at ¶ 7).

Defendant failed to appear, plead or otherwise defend the Commission's Complaint as provided by the Federal Rules of Civil Procedure. On September 25, 2007, the Clerk of Court entered a Certificate Noting Default as to the Defendant. (Copy of the Clerk's Certificate Noting Default is appended to Bellaire Dec. as Exhibit 2).

Under these circumstances, the Court may enter a judgment by default unless the defaulting defendant is an infant, incompetent or in active military service. Fed. R. Civ. P. 55 (b)(2); Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. § 520 ("Soldiers' and Sailors' Relief Act"). None of these exceptions apply here. Defendant is an adult, competent and not in military service as that term defined in the Soldiers' and Sailors' Relief Act. *See* 50 U.S.C. § 511(1). (Bellaire Dec. at ¶ 6).

As Defendant has been properly served and is not an infant, incompetent or in military service, the Commission respectfully requests that the Court enter a default judgment against Defendant in the form submitted with this Application.

## ARGUMENT

### I. ENTRY OF FINAL JUDGMENT BY DEFAULT IS APPROPRIATE

"When a party fails to file an answer, or otherwise plead or defend, within the time period required by Rule 12 of the Federal Rules of Civil Procedure, 'the clerk shall enter the party's default.'" Honda Power Equip. Mfg., Inc. v. Woodhouse, 219 F.R.D. 2, 4 (D.D.C. 2003) (quoting Fed. R. Civ. P. 55(a)). Following the clerk's entry of default, the Court may enter a default judgment. Id. (citing Fed. R. Civ. P. 55(b)). The default in this action was entered by the clerk; thus, the Commission's request for an entry of final judgment is ripe for consideration by this Court.

A court has the authority to order a default judgment when a defendant is "essentially unresponsive" to the adversarial process. Jackson v. Beech, et al., 205 U.S. App. D.C. 84, 636 F.2d 831, 836 (D.C. Cir. 1980). Additionally, a court can order a default judgment against a defendant who engages in dilatory tactics. Keegel v. Key West & Caribbean Trading Co. Inc., et al., 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). Accordingly, the diligent party is protected from facing "interminable delay and continued uncertainty as to his rights." Jackson v. Beech, *supra,* 636 F.2d at 836 (quoting H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Courts in this District consider the following factors in deciding "whether default judgment is appropriate: (1) whether the defendant's lack of response was willful, (2) whether not entering default would prejudice the plaintiff, and (3) whether the defendant will likely

assert a meritorious defense." James v. Booz-Allen & Hamilton, Inc., 206 F.R.D. 15, 18 (D.D.C. 2002) citing Jackson v. Beech, *supra*, 636 F.2d at 836.

The default here was the result of Defendant's culpable conduct. Defendant has been properly served and has defaulted willfully. The Commission has served Defendant in conformance with Rule 4(e)(2) of the Federal Rules of Civil Procedure. A summons and copy of the Complaint were personally served on Defendant. (Bellaire Dec. at ¶ 4).

In addition, Defendant has actual notice of this action. Before Defendant pled guilty in the Criminal Action, he filed a Motion for Issuance of Subpoenas to the SEC Pursuant to Federal Rule of Criminal Procedure 17C asserting that "[he] is presently before the court charged in a multi-count indictment with conspiracy and federal fraud charges arising out of a joint investigation by the Commission and other law enforcement agencies." (Criminal Docket #36).

Defendant has presented no defense. To the contrary, Defendant has admitted the elemental facts of the Commission's complaint in the Rule 11 hearing in the Criminal Action. The Commission would be prejudiced if a default judgment is denied because it would then have to expend time and resources in either preparing for a pointless trial against an absent defendant, or moving for summary judgment. Even if the Commission would not be prejudiced, a default judgment should nonetheless be entered, because "an absence of prejudice to plaintiff does not in itself entitle defendant to relief from the judgment." Whittaker v. District of Columbia, et al., 228 F.R.D. 378, 380 (D.D.C. 2005).

Where, as here, Defendant has failed to appear, and has willfully failed to make a timely answer or otherwise defend a properly served complaint, the entry of a default judgment is appropriate.

4

II.     **THE COURT SHOULD GRANT THE RELIEF SOUGHT BY PLAINTIFF**

A default establishes a defendant's liability, and the allegations of the complaint are to be taken as true. Carpenters Labor-Management Pension Fund et al., v. Freeman-Carder LLC, No. 06-2069, 2007 U.S. Dist. LEXIS 55972, at *67 (D.D.C. Aug. 2, 2007) citing Adkins v. Teseo et al., 180 F. Supp. 2d 15, 17 (D.D.C. 2001). (A"[d]efault establishes the defaulting party's liability for the well-pleaded allegations of the complaint.")

    A.     **An Injunction Is Warranted**

The Commission seeks a permanent injunction against Defendant for the statutory violations charged in its Complaint. A permanent injunction is an appropriate remedy under the Securities Exchange Act of 1934. 15 U.S.C. §§ 78u(d)(1), 78u(e). The Court should grant a permanent injunction where there exists a reasonable likelihood of future violations. SEC v. First City Fin. Corp. Ltd., et al., 890 F.2d 1215, 1228 (D.C. Cir. 1989). The relevant factors to be considered are:

> [W]hether a defendant's violation was isolated or part of a pattern, whether a defendant's violation was flagrant and deliberate or merely technical in nature, and whether the defendant's business will present opportunities to violate the law in the future.

Id. Courts have held injunctive relief appropriate when only the first two factors are present. E.g., SEC v. Bilzerian, 29 F.3d 689, 695 (D.C. Cir. 1994).

As alleged in the Complaint and admitted in Defendant's Criminal Statement of Offense, Defendant and others acting in concert with him, orchestrated a "pump and dump" scheme in violation of the anti-fraud provisions of the federal securities laws. The scheme involved the dissemination of fraudulent voicemail messages (the "Fraudulent Messages") designed to deceive prospective investors into believing that they had inadvertently received a "hot" stock tip. (The transcribed Fraudulent Messages are appended to Bellaire Dec. as Exhibit 3).

The scheme was designed to artificially inflate the market price and market demand of the following companies' stock: American Multiplexer Corp. ("AMUT"), Donini, Inc ("DNNI"), 5G Wireless Communications, Inc. ("FGWC"), Innovative Food Holdings, Inc. ("IVFH"), Maui General Store, Inc. ("MAUG), and Power3 Medical Products, Inc. ("PWRM") (the "stocks.") (Bellaire Dec. at ¶10)[1] In particular, Defendant and co-defendant, Jeffrey Scott Mills ("Mills"), owner of Direct Results of Sweetwater, LLC, engaged in a scheme and artifice to defraud investors in the capital markets of the United States by designing and creating the scripts for the Fraudulent Messages (Bellaire Dec. at ¶ 11); distributing tens of thousands of Fraudulent Messages throughout the United States, including within the District of Columbia (Bellaire Dec. at ¶ 14); causing the price and volume of the stocks to increase artificially by inducing prospective investors, with material misrepresentations contained in the Fraudulent Messages, into purchasing the stocks (Bellaire Dec. at ¶ 14); and, selling into the United States capital markets shares of the stocks at artificially inflated prices, which Defendant and other insiders had acquired before the broadcast of the Fraudulent Messages (Bellaire Dec. at ¶¶ 17-18). In carrying out this scheme, the Defendant violated Section 10(b) and Rule 10b-5. 15 U.S.C. 78j(b); 17 C.F.R. 240.10b-5; Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 476 (1977); SEC v. Kimmes, 799 F. Supp. 852, 859 (N.D. Ill. 1992), aff'd, 997 F.2d 287 (7th Cir. 1993). See SEC v. U.S. Environmental, Inc., 155 F.3d 107, 112 (2d Cir. 1998), cert. denied, 119 S. Ct. 1755 (1999) (primary liability for violations of Section 10(b) and Rule 10b-5 may be imposed "not only on persons who made fraudulent misrepresentations but also on those who had knowledge of the fraud and assisted in its perpetration."); see also SEC v. First Jersey Securities, Inc., 101

---

[1] AMUT is not included in the Criminal Action.

6

F.3d 1450, 1471 (2d Cir. 1996) (finding defendant liable as a primary violator of the antifraud provisions because he knew of the fraud and participated in the fraudulent scheme).

### B. Disgorgement Is Necessary to Prevent Defendant from Profiting.

Where a defendant has violated the securities laws, the Court has the equitable power to order disgorgement of his unjust enrichment. SEC v. First City Fin. Corp., *supra,* 890 F.2d at 1230; SEC v. Certain Unknown Purchasers (Santa Fe), 817 F.2d 1018, 1020 (2d Cir. 1987), cert. denied, 484 U.S. 1060 (1988).

The Court may order disgorgement, plus prejudgment interest, without holding an evidentiary hearing.  A hearing is not necessary "as long as [the Court] ensure[s] that there [is] a basis for the damages specified in the default judgment.  Carpenters Labor-Management Pension Fund v. Freeman-Carder LLC, *supra,* at * 7 citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997)).  The Commission is required to prove only an amount of disgorgement reasonably approximate of the benefits or profits causally connected to the violation. SEC v. First City Fin. Corp., *supra,* 890 F.2d at 1231.  Further, in Commission cases where disgorgement calculations cannot be exact, the risk of uncertainty falls on the wrongdoer, whose illegal conduct created the uncertainty. Id. at 1232.

Defendants are jointly and severally liable for disgorgement and prejudgment interest because they collaborated in the same flagrant pattern of violations, while pursuing a common illegal scheme.  "It is well established law that one who participates in any way in a conspiracy to defraud will be held jointly and severally liable with the conspirators." S.E.C. v. National Pacific Corp., et al., No. 76-1784, 1979 U.S. Dist. LEXIS 13150, at 19 (D.D.C. Aug. 7, 1979).

The Commission seeks disgorgement in the amount of $171,983. This sum includes the net proceeds of $86,750 from the sale of IVFH stock by Mills during the dissemination of the Fraudulent Messages touting IVFH stock in Mills' account at SunState Equity Trading, Inc. ("SunState"). (Bellaire Dec. at ¶ 17). These IVFH sales figures for the period August 12, 2004 through August 16, 2004 were taken from the account records that were provided to the Commission by SunState. (A chart summarizing these transactions is appended to Bellaire Dec. as Exhibit 6). Mills also received approximately $25,233 as his share of the proceeds from the sale of MAUG stock while the Fraudulent Messages were being broadcast as payment for his involvement in the scheme to promote MAUG. (Bellaire Dec. at ¶ 18). This $25,233 figure is affirmed by Mills in his Statement of Offense and documented by checks in the amount of $9,833 and $15,400 for a total of $25,233 deposited in Mills' SunTrust Bank account statement (Bellaire Dec. at Exhibit 7).

As a final component, the disgorgement sum includes a net cash payment of $60,000 received by the Defendant for his role in the scheme. After the Fraudulent Messages had been broadcast, Mills, Defendant and the telemarketer (whom the Defendant hired to broadcast the Fraudulent Messages) traveled to a Gulfport casino to receive payment for their involvement in the scheme. (Bellaire Dec. at ¶¶ 19-20). Mills gave a duffle bag containing approximately $100,000 of cash to Defendant during this trip. (Bellaire Dec. at ¶¶ 19-20). Defendant, in turn, paid the telemarketer approximately $40,000 which has been disgorged by the telemarketer in his settlement with the Commission.

    **C.**    **Defendant Should be Ordered to Pay Prejudgment Interest.**

This is an appropriate case for prejudgment interest to prevent Defendant from realizing any financial benefit from his illegal "pump and dump" scheme. <u>SEC v. Gerald H. Levine, et</u>

8

al., No. 99-2568, 2007 U.S. Dist. LEXIS 33686, at 44 (D.D.C. May 8, 2007). (To prevent a defendant from benefiting from an interest-free loan on his ill-gotten gains, the court requires him to pay interest on the disgorged amount.)  This Court should consider the following factors in deciding whether to award prejudgment interest: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." SEC v. Kenton Capital, Ltd. et al., 69 F. Supp. 2d 1, 16 (D.D.C. 1998) citing SEC v. First Jersey Securities, Inc., 101 F.3d 1450, 1476 (2d Cir. 1996) (quoting Wickham Contracting Co. v. Local Union No. 3, 955 F.2d 831, 833-34 (2d Cir. 1991)).

The Commission requests that prejudgment interest be calculated using the rate employed by the Internal Revenue Service for tax underpayments.  See 26 U.S.C. § 6621(a)(2). E.g., First Jersey Sec, 101 F.3d at 1476-77; SEC v. Drexel Burnham Lambert Inc., 837 F. Supp. 587, 612 n.8 (S.D.N. Y. 1993), aff'd sub nom, SEC v. Posner, 16 F.3d 520 (2d Cir. 1994). "Courts have approved the use of the IRS underpayment rate in connection with disgorgement." SEC v.First Jersey Sec., supra,101 F.3d at 1476.  Additionally, Courts have ordered defendants to pay prejudgment interest calculated through the date of the court's final judgment and order.  SEC v. Levine, supra, at 45.

A calculation for the appropriate prejudgment interest is appended to Bellaire Dec. as Exhibit 8.  The total prejudgment interest amounts to $40,682.  The total amount of disgorgement and prejudgment interest included in the proposed Final Judgment is $212,665. This method of computation is commensurate with the benefits that Defendant received from his illegal conduct.

9

### D. Civil Penalties Are Warranted Against Defendant.

This case justifies assessing a third-tier penalty as provided in Section 21(d)(3) of the Securities Exchange Act of 1934. [15 U.S.C. § 78u(d)(3)]. Pursuant to this provision the Commission is authorized to seek, and the Court is authorized to impose, a third-tier penalty if "(aa) the violation . . . involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement and (bb) such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." This provision authorizes third-tier civil penalties for each violation not to "exceed the greater of (I) $100,000 for a natural person . . . or (II) the gross amount of pecuniary gain to such defendant as a result of the violation . . . ."

A third-tier penalty is appropriate where, as here, Defendant engaged in fraud and deceit and created a significant risk of substantial losses to other persons. SEC v. Kenton Capital, Ltd., *supra*, 69 F.Supp. at 17. Defendant's broadcast of the Fraudulent Messages caused the trading volume of the six touted stocks to increase by approximately 1,500% in the aggregate and the share prices of the touted stocks were increased in the combined amount of approximately $179 million in market capitalization. (Bellaire Dec. at ¶ 14). The sole purpose of the broadcast was to artificially inflate the price of the stocks while those involved in the scheme sold their shares generating large profits. Thus, Defendant's conduct warrants imposition of a third-tier penalty. (Bellaire Dec. at ¶ 14).

## CONCLUSION

Having failed to answer the Complaint, Defendant is subject to a default judgment. The default was the result of Defendant's culpable conduct, the Commission would be prejudiced by any other result, and Defendant does not have a meritorious defense. The

circumstances warrant the relief sought by the Commission, including a permanent injunction, disgorgement of ill-gotten gains, with prejudgment interest, and a third-tier civil penalty.  The Commission respectfully requests that the Court enter judgment against Defendant and order the relief sought.

> Respectfully submitted,
>
> /s/ Alan M. Lieberman
> Alan M. Lieberman
> Andrea Bellaire
> Attorneys for Plaintiff
> Securities and Exchange Commission
> 100 F Street, NE
> Washington, DC 20549
> 202.551.4474

Dated: October 19, 2007
       Washington, D.C.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of October, 2007, a true and correct copy of Plaintiff's Application for Entry of Judgment By Default, Memorandum in Support and Declaration, and Proposed Order of Final Judgment By Default were served on the following parties entitled to notice, via Federal Express priority overnight prepaid and addressed to:

Roderic Lee Boling III, 121 Stag Ridge Ct, Longwood, FL 32779 and 205 Tranquility Cove, Altamonte Springs, FL 32701

Anna August Boling through her attorney Joanne Roney Hepworth, 601 Pennsylvania Avenue, NW, Suite 900, South Building, Washington, DC 20004

Jeffrey Scott Mills through his attorneys Brian W. Shaughnessy, 913 M Street, NW, Suite 101, Washington, DC 20001 and Mark David Hunter, 1515 North Federal Highway, Suite 300, Boca Raton, FL 33432

/s/ Andrea Bellaire
Andrea Bellaire