SEC v. Roderic Lee Boling, et al.
Case No.: 1:06CV01329 (RMC)

EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          .

          Plaintiff,               .

                                   .   CR No. 99-cr-228-ESH-2

     v.                            .

RODERIC L. BOLING, ANNA            .   Washington, D.C.
BOLING, and JEFFREY S.             .   July 3, 2007
MILLS,                             .   12:01 p.m.

          Defendants.              .

     . . . . . . . . . . . . .

TRANSCRIPT OF PLEA
BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          JONATHAN BURR, ESQ.
                             TEJPAL CHAWLA, ESQ.
                             United States Attorney's Office
                             Judiciary Center Building
                             555 Fourth Street, NW
                             Washington, D.C.  20530
                             202-514-9620

For Defendant:               LESLIE S. McADOO, ESQ.
Anna Boling                  Leslie McAdoo Chartered
                             1140 19th Street, NW
                             Washington, D.C.  20036
                             202-293-0534

For Defendant                THOMAS ABBENANTE, ESQ.
Roderic L. Boling:           1919 Pennsylvania Avenue, NW
                             Suite 200
                             Washington, D.C.  20006
                             202-223-6539

APPEARANCES con't. on next page.

1       APPEARANCES, con't.

2

3       For Defendant:              ROBERT O. SWITZER, ESQ.
        Jeffrey S. Mills            111 Soledad Street
4                                   Suite 1200
                                    San Antonio, Texas   78205
5                                   210-299-1053

6

        Court Reporter:             JACQUELINE M. SULLIVAN, RPR
7                                   Official Court Reporter
                                    U.S. Courthouse, Room 6720
8                                   333 Constitution Avenue, NW
                                    Washington, D.C. 20001
9                                   202-354-3187

10

        Proceedings reported by machine shorthand, transcript produced
11      by computer-aided transcription.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2          COURT CLERK:  This is criminal case number 06-228,

3  United States of America versus Jeffrey Mills, Roderic Boling,

4  and Anna Boling.  Mr. Barr and Mr. Chawla for the government.

5  Mr. Switzer, Mr. Abbenante, and Ms. McAdoo for the defendant.

6          THE COURT:  I'm sorry, is one of the defendants not

7  here?

8          MS. McADOO:  She's here.  She stepped out to the

9  ladies' room.

10          THE COURT:  I'm going to some extent address all the

11  people at the same time as to some of the matters, but I need

12  some clarification from the government about a bunch of things.

13          I'm waiting for the defendant.

14          MR. BARR:  I understand.

15          THE COURT:  Okay.  Do we have a signed copy just for

16  -- let's get some housekeeping matters.  Do we have the signed

17  copy of the originals and the proffers and the plea agreement

18  for each of the three?

19          MR. ABBENANTE:  Yes, your Honor.

20          THE COURT:  So what was sent to me before on the

21  statement I got?

22          MS. McADOO:  Ms. Boling is here, your Honor.

23          THE COURT:  That there was something changed on the

24  statement of offense on the second page.  Okay.  Everybody is

25  here.  The second page of Mr. Boling's statement of offense.

1    Now, let me make sure I understand this plea agreement.  It's a

2    little complicated.  You're applying the '06 guidelines, and

3    everybody agrees that there's no substantive difference between

4    '06 and '04?

5              MR. BARR:  Correct, your Honor.

6              THE COURT:  So it's okay to do the '06?

7              MR. BARR:  '06 and '03.  It would have been the '03

8    guidelines.  The '04 guidelines came into effect in November of

9    '04.

10             THE COURT:  So there's no substantive difference?

11             MR. ABBENANTE:  Right.

12             MR. BARR:  Second of all, I am not in the position,

13   nor am I required by law, we agreed to tell him what the exact

14   amount of restitution would be; is that correct?

15             MR. ABBENANTE:  That's correct.

16             THE COURT:  You intend to determine the amount by

17   doing what?

18             MR. BARR:  By sending out either a letter or a

19   questionnaire to people we believe lost money during the period

20   from purchases of the relevant stocks, requesting information

21   from them as to whether they heard the voicemail or not, and

22   requesting information from them about their purchases and when

23   they sold.

24             THE COURT:  And does everybody agree with this notion

25   that if a person bought for $40.00 and ended up selling after

5

1    the alert goes out and sold for $20.00, that the loss, the

2    restitutionary amount for that person is $20.00?

3            MR. BARR:  That's what the government's position is

4    going to be.  I mean, I think the defendants are free to argue

5    at sentencing what their position is in terms of the restitution

6    amount.

7            THE COURT:  Okay.  And if any defense counsel

8    disagrees with what Mr. Barr is saying let me know.  I'm

9    assuming that we're sort of at least educating me consistently

10   with your understanding.

11           MR. ABBENANTE:  Well, your Honor, I believe the

12   statute spells out how the restitution is to be ascertained.

13   The probation officer I believe has a role to play in that

14   analysis.  My understanding is what we would do is ascertain

15   whether or not there are identifiable victims who purchased the

16   stocks in response to the voicemails and then in fact lost

17   money.  From our side of the table I think that has to be

18   established, and the government has the burden of proving that

19   it is proximately caused by the conduct here and that there was

20   in fact an actual loss.  I think that's what that statute

21   requires.

22           THE COURT:  For restitution?

23           MR. ABBENANTE:  Yes, yes, Judge.

24           THE COURT:  But I am not, usually when I take a plea I

25   tell the people that the restitution will be approximately X.

1    We all agree I don't need to do that, and cannot do that here,

2    right?

3              MR. BARR:  Correct.

4              MR. ABBENANTE:  Right.

5              THE COURT:  Now, how is the government going about

6    figuring out, quote, loss here?  That's a very complicated

7    notion under the law.

8              MR. BARR:  I think, as your Honor knows, it is a

9    complicated notion in this case and so that the parties came to

10   a stipulated loss amount, intended loss amount for each person.

11   We base that loss amount on individuals who hired.  Individuals

12   who hired, for Mr. Boling we based it on individuals who had

13   been hired, Mr. Mills to do the stock promotion, which we

14   believed would have been foreseeable to him.

15             THE COURT:  I'm sorry.  What would be foreseeable to

16   Mills?

17             MR. BARR:  To Mr. Boling.

18             MR. ABBENANTE:  We believe it's foreseeable to each of

19   them that people, indeed they knew that people were going to be

20   selling stock and benefiting from the promotion, and so we went

21   about it from the getting perspective to people who hired this

22   stock promotion to be done, and for Mr. Boling, he was lower in

23   the chain, and so his knowledge of people who would be

24   benefiting from this is more limited than Mr. Mills, who was

25   hiring the chain and dealt with the people who were hiring this

1    to be done.

2          THE COURT:  So I didn't understand this before.  You

3    are taking the loss.  Let's see, what section is it of the

4    guidelines?

5          MR. BARR:  It's 2(b)1.1.

6          THE COURT:  You are proceeding on the notion for loss

7    purposes of what people out there who, let's call them insiders

8    for lack of a better word, gained from the scheme?

9          MR. BARR:  Your Honor, I think what we are proceeding

10   on is that the loss is difficult to calculate and that we are

11   therefore stipulating to what the loss would be for each person,

12   for each person what the loss foreseeable to that person.  And

13   the government has based its presentation of the numbers based

14   on the gain that certain people who hired them to do the

15   promotion made.  And in 2(b)1.1 there's a discussion about,

16   well, gain is not a perfect substitute for determining loss.  It

17   can be used in instances where loss is difficult to calculate.

18         THE COURT:  Where are you looking?

19         MR. BARR:  Hold on, your Honor.

20         THE COURT:  Hold on.  2(b)1.1.

21         MR. BARR:  Just one moment.  Okay.  2(b)1.1, the

22   application note three.

23         THE COURT:  Yes.

24         MR. BARR:  And the application note discusses various

25   ways to arrive at loss, and in application under the b section

1    of three, well, under the c section of three, it says the Court

2    need only make a reasonable estimate of the loss and the

3    sentencing judge is in a unique position to assess the evidence

4    and estimate the loss based upon that evidence.  And in this

5    case the parties are assisting the Court by stipulating to the

6    range of loss.  If you look at the b right above c, it says the

7    Court, the Court shall use the gain that resulted from the

8    offense as an alternative of loss only if there is loss but it

9    reasonably cannot be determined.

10             THE COURT:  So is it fair, is it clear to everyone

11    here that, and this may be different because I know there's an

12    11(c)1c as to two defendants, there is going to be an issue, or

13    is it basically uncontested for purposes of the offense level

14    the loss, or are we going to have to go through a loss hearing,

15    so to speak?

16             MR. BARR:  My understanding of the plea agreement is

17    that the parties are stipulating to the relevant offense level

18    under the guidelines.

19             THE COURT:  Is that true of all three?

20             MS. McADOO:  It's true with respect to my client, your

21    Honor, that we decided to just use this as our best ability to

22    arrive at that number for purposes of determining the offense

23    level having nothing to do with restitution.

24             THE COURT:  I understand that.  So that's more than

25    four hundred thousand for yours as well as Mr. Abbenante?

1          MR. ABBENANTE:  That's correct, your Honor.

2          THE COURT:  You agree with what Ms. McAdoo just said?

3          MR. ABBENANTE:  Yes.

4          THE COURT:  You're agreeing, you're stipulating it's

5    more than a million for your client?

6          MR. SWITZER:  One million dollars, your Honor.

7          THE COURT:  It has to be more.

8          MR. SWITZER:  One million, one million.

9          THE COURT:  It's more than a million.

10         MR. SWITZER:  Right, your Honor.  That is the

11   guideline range we are agreeing to.

12         THE COURT:  So if the probation folks decide something

13   else at least where there's no 11(c)1(c), what happens?

14         MR. BARR:  Well, in terms of Mr. Mills' agreement, if

15   probation finds a different amount of loss you, your Honor, are

16   not bound by the loss amount under the plea agreement between

17   the two parties, and so probation obviously will generate their

18   report in a manner as they see fit.

19         THE COURT:  You have a different plea agreement than

20   the other two?

21         MR. SWITZER:  I believe we have a rule 11(1)(3)(1)(c).

22   We have a million-dollar loss.

23         THE COURT:  No.  You better go back with your client

24   while I take up the other ones.

25         MR. BARR:  You have a straight plea agreement, not an

1    (e)(1)(c).

2         THE COURT:  Straight?  Okay.  Mr. Switzer, you better

3    go outside with your client and talk it all out and we'll take

4    you up second.  These people, the ones that are here right now,

5    are wired and I can go with them about them without worrying

6    about that.  Read it, sir, carefully.  I don't want to talk to

7    your client unless he understands it.  What's in the bag?

8         MR. SWITZER:  This bag, your Honor?

9         MR. ABBENANTE:  Newly discovered evidence.

10        MR. SWITZER:  This is the casino bag that your Honor

11   has heard a lot about.

12        MR. BARR:  It's the bag that was received at the

13   casino that was full of cash.

14        THE COURT:  Let me make sure that I understand one

15   more thing on the 11(c)(1)(c) which doesn't apply to Mr.

16   Switzer.  If I decide for whatever reason, I understand if I

17   decide not to buy into the deal for either one of these

18   defendants they have the opportunity to withdraw their plea.

19   It's very confusing the way you've written it.  If they withdrew

20   their plea because I don't buy into the 11(c)(1)(c), which I

21   have the right to do at the time of sentencing, not that I will,

22   but I have the right, can you use their admissions as part of

23   the case against them if they choose to go to trial?

24        MR. BARR:  That's correct, your Honor.

25        THE COURT:  Since when?  Is that legal?

11

1      MR. BARR:  I think there is a -- well, I mean, that's

2  how we wrote the agreement.  I think that, you know, language is

3  accepted by the DC circuit.

4      THE COURT:  Even in a 11(c)(1)(c)?

5      MR. BARR:  I don't know whether a specific case has

6  come down, but I believe that the defendants, I mean, the

7  defendant could come in at any time and decide to voluntarily

8  give a statement to the government which the government, you

9  know, with no protections, and the government could use it, so I

10 think the defendants can't --

11     THE COURT:  Here they're under oath.  They're entering

12 a plea contingent on my accepting it.  I'm unfamiliar with

13 11(c)(1)(c) that works that way.  I understand that if they

14 breach the agreement, etcetera, etcetera, that they -- I don't

15 know.  Mr. Switzer, I'll take you up later.  I don't want him

16 rushing in here and plead to something he doesn't understand,

17 because you obviously have to spend some time with him.

18     MR. SWITZER:  We did -- we figured out, your Honor,

19 this was getting faxed back and forth Saturday night, your

20 Honor.  It's 11(c)(1)(b), not rule 11(e)(1)(c), but we have

21 agreed to $1 million.

22     THE COURT:  No, you have to agree to more than $1

23 million.  Can I ask you --

24     MR. SWITZER:  Loss of more than one million, your

25 Honor?

1    MR. BARR:  But there's no way he can withdrew his

2    plea, your Honor.

3    MR. SWITZER:  I understand, your Honor, and so does

4    Mr. Mills.  It's unlike the other two.  They have a different

5    deal.

6    THE COURT:  I think, Mr. Switzer, I'll take up your

7    client second, so he can sit back there a little bit, because

8    it's confusing.  What I have to say to the Bolings doesn't apply

9    to you.  It's a different kind of plea.  I'll try to explain

10   your plea to you separate and apart.

11   MR. BARR:  The poison pill language is accepted.  I

12   don't know that the case I'm referring to wasn't a C plead case,

13   but whether it was a C plead case or not, I mean, if the

14   defendant signed the poison pill portion of the agreement.

15   THE COURT:  I never heard of poison pills.

16   MR. BARR:  That's just the vernacular I'm familiar

17   with, but, your Honor, we've offered this plea agreement on the

18   eve of trial.

19   THE COURT:  I understand.

20   MR. BARR:  We're taking the plea on the eve of trial.

21   It's a cooperation plea agreement, and it's fairly typical for

22   all cooperation plea agreements to have the 410 waiver language

23   in it.

24   THE COURT:  Of course.  Do you understand it the way I

25   just said it, Mr. Abbenante?  That is, that if I for some reason

1    didn't buy in at the time of sentencing, which I have the right

2    to do under 11(c)(1)(c), and I retain that right all the way to

3    the end, they have the right at that point, I must tell them,

4    Ms. Boling, Mr. Boling, I am not going to go along with the

5    offense level as defined.  Hypothetically that can happen.  I'm

6    required to tell you that.  They could basically, if they say,

7    sorry, I don't want to go because I don't trust this judge and

8    the judge says that she's going above it, they can say, I'm not

9    going to go forward with the plea, I withdraw my plea.

10   Understand the way this is written he says he can use the

11   statement made here today, the admissions against them.  You

12   agree?

13          MR. ABBENANTE:  I understand, I understand, your

14   Honor, but I think that in making the decision and knowing the

15   case the way I do I just weighed that and I think that, your

16   Honor, you know, will, once you see all the facts in the pre-

17   sentence report, won't have a problem accepting this plea.

18          THE COURT:  That may be.

19          MR. ABBENANTE:  I understand that so I took that risk.

20   I think so, I understood it.

21          THE COURT:  Ms. McAdoo, do you understand the language

22   the way I just said it?

23          MS. McADOO:  I believe so, your Honor.

24          THE COURT:  What that means here, in the unlikely

25   event at the time of sentencing the Court were to say I'm not

1    going the route that you've agreed to for whatever reason, you

2    have a right at that point to say, okay, I'm going to withdraw

3    my plea.  Do you understand that, Ms. Boling?

4              DEFENDANT A. BOLING:  Yes.

5              THE COURT:  Mr. Boling?

6              DEFENDANT R. BOLING:  Yes, I do, your Honor.

7              THE COURT:  The only little catcher is if you do that,

8    if you take that route, they can take your statements here

9    today, the stuff that you've signed and told them, and they can

10   use it against you directly and indirectly, right?

11             MR. BARR:  That's correct, your Honor.

12             THE COURT:  Let just make sure we understand.  Now,

13   you, though the government can't do anything if I say, well, I

14   don't like the plea and I'm going lower, it's not in there.  I

15   just want to tell you what's in and what's not in.

16             MR. BARR:  Okay.  I guess I don't understand.  I think

17   that we're --

18             THE COURT:  I have the right under the plea agreement

19   to sentence outside those guidelines, don't I, if I'm going to

20   sentence above it.

21             MR. BARR:  Yes.  Yes, you do you have the right to

22   sentence below it.  You have the right to sentence above it as

23   long as you sentence -- as long as you determine the guideline

24   is that guideline of 22.  The C Plea obligates you to the

25   offense level in the plea agreement.

15

1            THE COURT:  Well, that means that, unless I'm losing

2       something, that for them, for the two defendants, not you, the

3       government, but for the two defendants if I'm going to go above

4       the guidelines first that that's absolutely necessary after I

5       see it they have a choice.  If I'm going to go below the

6       guidelines because of whatever reason, I'm entitled to, and you

7       don't have a choice, fair?

8            MR. BARR:  You mean to withdraw from the agreement?

9            THE COURT:  Yes.

10           MR. BARR:  Correct, I understand that's the way it's

11      written.

12           MR. ABBENANTE:  That's the way it's written.

13           MR. BARR:  But, your Honor, the government is not,

14      based on your sentence, the government is not going to withdraw

15      from the agreement.  We don't do that in plea agreements.

16           MR. ABBENANTE:  I don't think that's what you're

17      saying to them.

18           THE COURT:  They don't have choices.

19           MR. ABBENANTE:  Right.

20           THE COURT:  That's fine.  It's important to get a lot

21      of these things out here.  And under this, are they free --

22      they're not free at the time of sentencing to quibble with the

23      loss calculation?

24           MR. BARR:  No, they're not, your Honor.  They have

25      agreed to not seek a departure and not seek a departure from the

1  guidelines.

2          THE COURT:  The only thing that they're allowed to do

3  under this plea agreement in terms of guidelines, departures, or

4  variances is a 5K?

5          MR. BARR:  Correct.

6          THE COURT:  Do we have to close anything in the

7  courtroom?

8          MR. ABBENANTE:  No.

9          THE COURT:  Is there any anticipation anybody here

10  might get one?

11          MR. BARR:  There is some anticipation if that's

12  possible.

13          THE COURT:  We agree under the law that restitution

14  here would be joint and several.

15          MR. BARR:  I think that's correct, your Honor.

16          MR. ABBENANTE:  Right.

17          MS. McADOO:  I'm not sure that that's exactly right.

18  The statute allows your Honor to apportion restitution amongst

19  defendants.  This is 18 USC 3664.  I believe the subsection is

20  either g or h.

21          THE COURT:  Nobody here is going to understand what

22  joint and several is.  I can barely understand it most of the

23  time.  Joint and several means that if I do a restitutionary

24  award and make it joint and several it means that if one person

25  steps forward and pays all the restitution the other person

1    doesn't pay anything, but what section are we looking at?

2         MS. McADOO:  It's 18 USC 3664, subsection h.

3         THE COURT:  But the other part of joint and several is

4    that hypothetically if one person has no money or two people

5    have no money but a third has money, they can go after that

6    person for all the restitution, so nobody is paying twice.  The

7    government can't collect for restitution twice.  It means that

8    everybody doesn't owe a hundred dollars each if I impose a

9    hundred dollars restitution, but if only one person has a

10   hundred dollars they can pursue that person for the whole amount

11   and that person has nothing to complain about.  All right?

12        MR. BARR:  Under the statute it looks like you can

13   either apportion it individually or you could apportion it to

14   the whole, joint and several.

15        THE COURT:  I'm looking at h.  It looks likes it's my

16   choice, right?

17        MS. McADOO:  Correct.

18        THE COURT:  So what for all three defendants this

19   means, that the Court, it's mandatorily required that I impose

20   restitution.  A fine is not mandatory.  A fine is based on

21   whether you have the ability to pay and I have to make findings,

22   but restitution, you can be poor as can be, not have a penny to

23   your name, and the Court is required to impose restitution.

24   They're going to come up with a loss amount; maybe we'll debate

25   it, maybe we won't, maybe you'll accept it, but whatever amount

1    the restitution is I can sock it all to one person if I chose.

2    I can apportion it or I can make it joint and several, which

3    means all three are liable for the whole but the government

4    can't collect more than the whole.  Very complicated.

5            MR. ABBENANTE:  There is one other thing, your Honor.

6    In Mr. Boling's plea agreement we reserve the right to argue his

7    criminal history category.

8            THE COURT:  Yes.  I was about to ask you what's the

9    debate here so I have some sense of what the --

10           MR. ABBENANTE:  Well, at some point I had determined

11   that it was a three, possibly a four.  The government has come

12   up with some information that they think that may raise it

13   higher than that.  I think there's arguments at least on behalf

14   of Mr. Boling that we would convince a Court that it's

15   overstated if it gets to that point, but I'm thinking it's a

16   three.

17           THE COURT:  No, understand this.  Wait a minute.  When

18   you say "overstated," you're not talking for purposes of the

19   departure, you're talking we're now, because you're not, you

20   haven't retained the right to argue departure based on

21   overstatement of criminal history.

22           MR. ABBENANTE:  Yes, we have.

23           THE COURT:  You have?

24           MR. ABBENANTE:  Right.

25           THE COURT:  Is that true?

19

1          MR. BARR:  It's our position that they can make any

2    argument they want.  They can make any argument they want

3    concerning the criminal history category.

4          THE COURT:  As we sit here today the other two

5    defendants we do not know of any criminal history.

6          MR. BARR:  That's correct, your Honor, and the

7    government, I mean, the government, based on our preliminary

8    calculations, believes Mr. Boling may be in a six category.

9          THE COURT:  Six?

10         MR. BARR:  Correct.

11         THE COURT:  That's a big deal.  What's the offense

12   level that you've agreed to?

13         MR. ABBENANTE:  22.

14         THE COURT:  So hypothetically, Mr. Boling, this is

15   what you got to know.  And this is very important because you

16   don't get to withdraw your plea based on my decision on the

17   criminal history.  You can only withdraw your plea, Mr. Boling,

18   the only condition is if I don't go with the offense level.  The

19   offense level that's been defined is 22, but the criminal

20   histories, we're talking between 51 months and 105 months,

21   depending on whether criminal history three, four, five, or six,

22   and we can't make predictions.  We don't know.  It may be a

23   major battle down the road, but that won't allow you to withdraw

24   your plea.  Is that clear?

25         DEFENDANT R. BOLING:  Yes, ma'am.  Yes, your Honor.

1          THE COURT:  Do you have any questions about that?

2          DEFENDANT R. BOLING:  No, your Honor.

3          THE COURT:  I know I don't like to be called "ma'am,"

4    but as long as you understand the question I'm happy.  Do you

5    understand the question?

6          DEFENDANT R. BOLING:  Yes, your Honor.

7          THE COURT:  Shift category three, bottom 51 to a

8    category six criminal history that goes all the way to 105 in

9    months.  Clear?

10          DEFENDANT R. BOLING:  Yes, your Honor.

11          THE COURT:  All right.  Now let's swear the two

12    Bolings and we'll do this first.  I think it's too complicated

13    to do it any other way.  Can you come to the podium?  You're

14    going to be put under oath.  There is going to be a point in

15    time I want also to swear Mr. Mills right at this time because

16    there are a few questions that are common to everyone, and I

17    will address Mr. Mills as we go along.

18          COURTROOM DEPUTY:  Thank you.  Do you and each of you

19    solemnly swear that you will well and truly answer all questions

20    propounded to you by the Court, so help you God?

21          DEFENDANT R. BOLING:  I do.

22          DEFENDANT A. BOLING:  Yes, I do.

23          MR. MILLS:  Yes.

24          THE COURT:  Thank you.

25          Mr. Mills, have a seat for a moment, if you would.

1    You're under oath.  Everybody is under oath.  I'll let you know

2    whether everything applies to all three of you.  You have to

3    understand you have been sworn.  Anything you say here, if it's

4    a lie, untrue, you can be prosecuted for obstruction or perjury.

5    If there's something you don't understand, please ask me, I'll

6    explain it or you can ask your counsel.  If you don't ask a

7    question, I'll have to assume that you understand and you're

8    answering truthfully because you understand the question.  So

9    stop if there is something that you don't understand.  Also,

10    very important, what this says in these plea agreements, and

11    this applies to all three people, that if in fact you withdraw

12    your plea, everything you say here can be used against you both

13    directly and indirectly.  They can make a case.  The admissions

14    you make today are basically you're admitting to these offenses.

15    There are long statements of offenses, and basically you will,

16    if you decide to withdraw your plea and go to trial, everything

17    you say either here or anything you tell the government in any

18    kind of informal cooperation can be used against you.  Is that

19    clear, Ms. Boling?

20            DEFENDANT A. BOLING:  Yes.

21            DEFENDANT R. BOLING:  Yes, your Honor.

22            THE COURT:  Mr. Mills, do you understand what I just

23    said?

24            DEFENDANT MILLS:  Yes, your Honor.

25            THE COURT:  So to be perfectly clear, first I want to

1    ask Ms. Boling, how old are you, please?

2              DEFENDANT A. BOLING:  Thirty-five.

3              THE COURT:  How far did you go in school?

4              DEFENDANT A. BOLING:  High school diploma.

5              THE COURT:  Mr. Boling?

6              DEFENDANT R. BOLING:  Forty-one, your Honor.

7              THE COURT:  How far did you go in school?

8              DEFENDANT R. BOLING:  High school.

9              THE COURT:  Can you both read and write?

10             DEFENDANT A. BOLING:  Yes.

11             DEFENDANT R. BOLING:  Yes.

12             THE COURT:  Were you born in the U.S.?

13             DEFENDANT A. BOLING:  Yes.

14             DEFENDANT R. BOLING:  Yes.

15             THE COURT:  Have you taken any drugs or alcohol in the

16   last couple of days that in any way would impair your ability to

17   understand these proceedings?

18             DEFENDANT A. BOLING:  No, your Honor.

19             DEFENDANT R. BOLING:  No, your Honor.

20             THE COURT:  Have you ever been treated for any kind of

21   emotional problems or mental illness?

22             DEFENDANT A. BOLING:  No, your Honor.

23             DEFENDANT R. BOLING:  No.

24             THE COURT:  Now, you've both been represented by

25   counsel.  Ms. McAdoo came in late and has done a great job.  Are

1    you satisfied with her services, Ms. Boling?

2         DEFENDANT A. BOLDING:  Yes, your Honor.  Thank you for

3    letting me have her.

4         THE COURT:  Okay.  Have you had enough time to talk to

5    her about this case and your decision to plead guilty?

6         DEFENDANT A. BOLING:  Yes.

7         THE COURT:  Has she, as far as you know, thoroughly

8    investigated this matter?

9         DEFENDANT A. BOLING:  Yes, your Honor.

10        THE COURT:  Same questions to Mr. Boling.  You've been

11   represented since the beginning by Mr. Abbenante.  Are you

12   satisfied with his services?

13        DEFENDANT R. BOLING:  Yes, your Honor.

14        THE COURT:  Have you had enough time to talk to him

15   about this case and your decision to plead guilty?

16        DEFENDANT R. BOLING:  Yes, your Honor.

17        THE COURT:  Can you give Mr. Mills the mic, please?

18   I'm going to ask him the same question.

19        MR. SWITZER:  Would you like Mr. Mills to approach the

20   podium?

21        THE COURT:  No, I don't think so.  It gets too

22   complicated.  It's a little crowded up there.

23        Mr. Mills, how old are you, please?

24        DEFENDANT MILLS:  Forty-four.

25        THE COURT:  And how far did you go in school?

1          DEFENDANT MILLS:  High school.

2          THE COURT:  Did you graduate?

3          DEFENDANT MILLS:  Yes, ma'am.

4          THE COURT:  And do you read and write?

5          DEFENDANT MILLS:  Yes, ma'am.

6          THE COURT:  And were you born in the U.S.?

7          DEFENDANT MILLS:  Yes.

8          THE COURT:  Have you taken any drugs or alcohol in the

9 last few days that would impair your ability to understand these

10 proceedings?

11          DEFENDANT MILLS:  No, your Honor.

12          THE COURT:  And are you satisfied with your -- have

13 you ever been treated for any kind of emotional or psychiatric

14 problems?

15          DEFENDANT MILLS:  No, your Honor.

16          THE COURT:  Are you satisfied with Mr. Switzer's

17 services?

18          DEFENDANT MILLS:  Yes, your Honor.

19          THE COURT:  Has he thoroughly investigated this matter

20 as far as you know?

21          DEFENDANT MILLS:  Yes, your Honor.

22          THE COURT:  Have you had enough time to talk to him

23 about the case?

24          DEFENDANT MILLS:  Yes, your Honor.

25          THE COURT:  And your decision is to plead guilty?

1        DEFENDANT MILLS:  Yes, your Honor.

2        THE COURT:  The next series of questions applies to

3    all three of you.  If you don't mind, it's not the preferable

4    way to do it, but we're going to do it.  You understand this

5    applies solely to Ms. Boling.

6        Ms. Boling, you are going to be pleading to what's

7    called an information as opposed to an indictment.  The

8    information charges one count under 18 USC section 4.  You have

9    to understand that you do have a Constitutional right to be

10   indicted by a grand jury.  That means that 16 folks would have

11   to agree, 12, I'm sorry, 12 grand jurors, sorry, would have to

12   agree that you were guilty of the offense -- that there was

13   probable cause to believe that you were -- you are guilty of the

14   offense charged.  By entering a plea of guilty you're giving up

15   any right to be indicted by a grand jury.

16       The other two gentlemen, there is an indictment

17   already in existence, and you are pleading to an indictment, so

18   you're not giving up that Constitutional right, but as to all

19   three, you are, by entering pleas of guilty here, giving up the

20   right to a jury trial, and in a jury trial the government would

21   have to prove you guilty beyond a reasonable doubt.  There is a

22   presumption of innocence, and unless and until the government

23   convinces twelve members of the community that you are guilty

24   beyond a reasonable doubt you are presumed innocent.  At a trial

25   you have the right to have your counsel cross-examine the

1   government's witnesses, you have a right to call witnesses on

2   your own behalf, you have the right to counsel and if you could

3   not afford one one would be appointed for you.  You have the

4   right to take the stand and tell your side of the story but

5   you're not required to do so because you have what's known as a

6   5th Amendment privilege to remain silent and the jury would be

7   told if you remain silent that they cannot infer guilt based on

8   your silence.  You also, if you went to trial and you were

9   convicted, you have a right to appeal.  You could argue to an

10  appellate court that this Court made an error below or there was

11  insufficient evidence.  Under these plea agreements you're

12  giving up all those Constitutional rights.  There will be no

13  trial, and your rights to appeal are limited solely to arguing

14  the Court has imposed an unlawful sentence, correct, that's the

15  only appellate right they have?

16          MR. ABBENANTE:  Yes.

17          THE COURT:  An unlawful sentence is basically not one

18  that's outside the guidelines, it's one that's outside -- if I

19  went above the statutory maximum.  Correct?

20          MR. ABBENANTE:  Right.

21          THE COURT:  That's an unlawful sentence, that's about

22  it.  You agree?

23          DEFENDANT R. BOLING:  Yes, your Honor.

24          THE COURT:  So Mr. Boling, do you understand your

25  Constitutional rights?

1          DEFENDANT R. BOLING:  Yes, your Honor.

2          THE COURT:  And you understand that you'll be giving

3   them up here?

4          DEFENDANT R. BOLING:  Yes, your Honor.

5          THE COURT:  Same question to Mr. Mills.

6          DEFENDANT MILLS:  Yes, your Honor.

7          THE COURT:  And Ms. Boling?

8          DEFENDANT A. BOLING:  Yes, your Honor.

9          THE COURT:  Each of you have, I assume, you have read

10   and gone over with your counsel the lengthy statement of fact or

11   a statement of offense.  Ms. Boling, did you read this

12   carefully?

13          DEFENDANT A. BOLING:  Yes, I did, your Honor.

14          THE COURT:  And did you sign it?

15          DEFENDANT A. BOLING:  Yes, I did.

16          THE COURT:  Did you have enough time to talk to your

17   counsel about it?

18          DEFENDANT A. BOLING:  Yes, I did, your Honor.

19          THE COURT:  And is there any fact, and it's really

20   quite long, about fourteen pages in your instance, anything

21   there that you wish to correct or anything?  Well, let's say is

22   there anything you wish to correct?

23          DEFENDANT A. BOLING:  No, your Honor.

24          THE COURT:  Is there anything that's false or

25   inaccurate or misleading?

28

```
 1              DEFENDANT A. BOLING:  No, your Honor.

 2              THE COURT:  Okay.  Now, basically there's a lot in

 3      here regarding what you knew, etcetera, but the important

 4      purpose is that you basically told your relatives that it wasn't

 5      your voice on the machine and with the expectation and hope that

 6      they would go in front of the grand jury, both your sister and

 7      your mother, and repeat these falsehoods; is that correct?

 8              DEFENDANT A. BOLING:  Yes, your Honor.

 9              THE COURT:  And you had full knowledge that these

10      voicemails were yours and they were filed with

11      misrepresentations, correct?

12              DEFENDANT A. BOLING:  Yes, your Honor.

13              THE COURT:  And you took steps to conceal the offense

14      essentially by having your family members say that that wasn't

15      your voice on the voicemails?

16              DEFENDANT A. BOLING:  Yes, your Honor.

17              THE COURT:  And same question, Mr. Boling, you've gone

18      through the statement of facts, this statement of offense?

19              DEFENDANT R. BOLING:  Yes, your Honor.

20              THE COURT:  Did you read it carefully?

21              DEFENDANT R. BOLING:  Yes, I did, your Honor.

22              THE COURT:  Did you go over it with Mr. Abbenante?

23              DEFENDANT R. BOLING:  Yes, your Honor.

24              THE COURT:  And is there anything in it that's

25      inaccurate or false?
```

 1              DEFENDANT R. BOLING:  No, your Honor.

 2              THE COURT:  Is it in fact the -- it indicates that you

 3    conspired with these others to commit both security fraud and

 4    wire fraud.

 5              MR. ABBENANTE:  Just securities fraud.

 6              THE COURT:  Securities fraud, and that in fact you did

 7    commit securities fraud by agreeing and participating in the

 8    leaving of false misleading voicemails throughout regarding a

 9    whole series of companies, you admit that?

10              DEFENDANT R. BOLING:  Yes, your Honor.

11              THE COURT:  And, Mr. Mills, the same question, have

12    you had a chance to thoroughly go over this statement of

13    offense?

14              DEFENDANT MILLS:  Yes, your Honor.

15              THE COURT:  And is there anything in here -- you

16    signed it?

17              DEFENDANT MILLS:  Yes, your Honor.

18              THE COURT:  By signing it are you agreeing that it is

19    true and accurate?

20              DEFENDANT MILLS:  Yes, your Honor.

21              THE COURT:  Is there anything about it that's in any

22    way false or inaccurate?

23              DEFENDANT MILLS:  No, your Honor.

24              MR. SWITZER:  Your Honor, as a point of clarification,

25    I've discussed this with the prosecution, the first voicemail

1    Mr. Mills and Mr. Boling coordinated the, quote, script on.

2    After that Mr. Mills would supply the stock symbol but didn't

3    actually coordinate on the language, which was essentially the

4    same as the first one.

5          THE COURT:  I see.

6          But, Mr. Mills, you knew that these voicemails that

7    had been sent out were false and misleading, right?

8          DEFENDANT MILLS:  Yes, your Honor.

9          THE COURT:  And you knew that they were going to apply

10   to these various companies, right?

11         DEFENDANT MILLS:  Yes, your Honor.

12         THE COURT:  And whether or not you wrote the script

13   for every one of these, you knew about the fact that these false

14   voicemails were being perpetuated throughout the country; is

15   that correct?

16         DEFENDANT MILLS:  Yes; the majority of them, yes, your

17   Honor.

18         THE COURT:  What do you mean, the majority of them?

19   Is it some voicemails that you weren't aware of?

20         MR. SWITZER:  Yes, your Honor.  AMUT and TNT Aim and

21   Twister went out without Mr. Mills' knowledge, and I believe

22   that's reflected, I'm not even sure that was even in there.  I

23   believe that was taken out, your Honor.

24         MR. BARR:  The voicemails for AMUT and TWTN are not

25   contained within the statement of offense for Mr. Mills.  All of

1    the voicemails in the statement of fact for Mr. Mills he was

2    aware of.

3              THE COURT:  Then I would ask Mr. Mills and Mr. Roderic

4    Boling to have a seat for a moment and we're going to go through

5    the plea agreement individually with first Ms. Boling and Mr.

6    Boling.

7              MR. SWITZER:  I just want to make sure we're clear,

8    your Honor.  Ms. Boling is pleading only to misprision of a

9    felony.  The government is going to dismiss the other counts in

10   the indictment.

11             THE COURT:  I know, that's why we went through the

12   information.  I'm aware of that.  Let me make sure I got this

13   all straight.  You went through this plea agreement with your

14   counsel?

15             DEFENDANT A. BOLING:  Yes, I did.

16             THE COURT:  And I am sure she explained it to you,

17   correct?

18             DEFENDANT A. BOLING:  Yes, she did.

19             THE COURT:  And the Court would like, though, it is a

20   complicated plea agreement, in particular as to the Bolings.

21   You understand that you are -- this first of all, it's wire, so

22   if Mr. Boling here doesn't go through with his plea in the next

23   few minutes this whole thing is off, but I'm assuming we're

24   going forward and everything is all right.  It says here the

25   government's free to use against you directly or indirectly in a

1   civil or criminal proceeding all your statements made here today

2   and including statements that you might have made in debriefings

3   conducted before or after this agreement.  Do you understand

4   that?

5             DEFENDANT A. BOLING:  Yes, I do, your Honor.

6             MR. SWITZER:  Your Honor, I read that language to mean

7   only if Mr. Boling does not execute his guilty plea.

8             THE COURT:  That's what I said, but if he doesn't do

9   it.

10            MR. SWITZER:  Right.

11            THE COURT:  All bets are off if the government

12   chooses.

13            MR. SWITZER:  But if he does go through with it then,

14   and somehow later breaches his agreement, I don't understand

15   this to mean that they can then use Ms. Boling's statements

16   later.

17            THE COURT:  No, I don't think her plea goes down the

18   drain if he somehow or other or doesn't.  Who knows?

19            MR. BARR:  Wait one second, your Honor.

20            THE COURT:  Wire a plea means they both have to plea.

21   I don't know.

22            MR. BARR:  Well, they both have to plea and it has to

23   be accepted by your Honor, and, you know, if --

24            THE COURT:  Right.

25            MR. BARR:  If he later breaches his plea agreement and

1   attempts to withdrew, her plea is still valid.

2           THE COURT:  So the wiring is no longer in effect so to

3   speak.

4           MR. BARR:  The wiring, my understanding of the wire,

5   it's wired until you accept it.

6           THE COURT:  Okay.  But I'm not accepting any pleas

7   here.  I can't do it until I have the PSI formally.  Whatever I

8   accept today will be contingent on reading the PSI, presentence

9   report.

10          MR. BARR:  I think it's wired until you actually

11   finally accept it.

12          THE COURT:  And no one withdraws.

13          MR. BARR:  Correct.

14          THE COURT:  All right.  And it goes here on to page

15   two, it tells you about your waiver of your grand jury

16   indictment.  We already talked about that.  It says you're going

17   to be pleading to one offense, misprision of a felony, the

18   felony that involved a securities fraud, 18 USC section 44.  You

19   understand that pursuant to this offense the maximum possible

20   sentence is three years imprisonment, a fine of $250,000 or a

21   fine of twice the pecuniary gain or loss, and that depends on

22   finding that you have the ability to pay a fine.  A hundred

23   dollars special assessment.  That has to be paid by the time of

24   sentencing.  One year term of supervised release, an order of

25   restitution, and you are, we got to pay penalties or interest on

34

1    fines or restitutions.  If you were to be out on supervised

2    release and violate the terms, I could send you back to jail or

3    to jail.  You also have to understand that you are pleading

4    without knowing the specific amount of restitution that the

5    Court will order.  The methodology has been set forth, but it is

6    not -- I cannot define it for you.  You understand that?

7            DEFENDANT A. BOLING:  Yes, I do, your Honor.

8            THE COURT:  And I can if I want make it joint and

9    several or I can order one person to pay all of it.  I guess the

10   way we read the statute I have discretion about that.   In

11   exchange for this plea, the government is going to dismiss the

12   counts one through nine at the time of sentencing of the

13   indictment.  You've already agreed to the factual stipulations

14   and signed it.  Now, this is where this is confusing.  This is

15   what is called an 11(c)(1)(c) plea.  That means that you and

16   your counsel have agreed with the government here that there

17   will be a certain guideline range.  We are assuming that you

18   have a criminal history of one, meaning no criminal prior record

19   of convictions, and that the offense level is ten.   Ten is based

20   on an assumption that you will not commit any further offenses.

21   You will be eligible for acceptance of responsibility.  You will

22   not lie to me or the probation office.  The Court will tell you

23   at the time of sentencing if it will sentence within that range,

24   ten with a criminal history of one, an offense level of ten.

25   The guideline range provide six to twelve months.  The

 1    government's agreeing not to ask for prison time.  I have the

 2    right to give you prison time.  You have to understand that.

 3    You can't withdraw your plea.  The only way you can withdraw it

 4    under this c(1)c is if I say I'm not going to sentence in

 5    accordance with an offense level ten.  Is that clear?

 6              DEFENDANT A. BOLING:  Yes, that's clear, your Honor.

 7    I hope you don't.

 8              THE COURT:  I'm sure that your counsel has explained

 9    it, but this is a little bit of a complicated plea.  Your only

10    right to appeal that you've retained here is if I impose an

11    unlawful sentence, so I would have to go above the three-year

12    maximum for you to have an appellate issue here.  I can sentence

13    within the guideline range.  If I go above the guideline range

14    here that's been defined I have to tell you and you have a right

15    to withdraw the plea or you can go ahead with whatever I'm

16    suggesting.  The government does not retain a right to withdraw

17    their agreement here.  They've said that you are agreeing to a

18    loss of more than four hundred thousand and that's what's

19    driving this offense level of twelve minus two for acceptance of

20    responsibility.  The parties are agreeing that this is the

21    offense level of ten with a guideline range of six to twelve

22    months is reasonable, but it's not binding on me.  I'm the one

23    who has to decide what sentence to impose.  I am not bound by

24    the guidelines.  They're advisory, but I'm bound by the

25    guidelines here to the extent that if I'm not going to abide by

1     them you have a right to withdraw your plea at the time of

2     sentencing.

3            That 11c(1)(c) is applicable to Mr. Boling with some

4     permutations.  It is not applicable to Mr. Mills.  It provides

5     here that you cannot argue for any downward departures or

6     variances from that guideline range except if the government

7     files a motion under 5K.  That's a cooperation motion.  That

8     would -- and whether they do that or not is up to them.  It's

9     the U.S. Attorney's office who decides whether to file a 5K.

10    I'm not bound by it if they do.  I have no power over their

11    determination, so if they do fine, if they don't, you cannot

12    argue for any kinds of variances.  You are able to argue under

13    this for no jail time obviously, but you can't because you're in

14    what's called the Zone B, but you cannot argue that I should go

15    to a lower level than the ten that's set forth here based on any

16    kind of argument regarding departure or variance.

17           Now, paragraph five is the one that says you can

18    withdraw the plea at the time of sentencing.  If I choose not to

19    sentence you within that guideline range of six to twelve months

20    I have to tell you and you have a choice at that point, and if

21    you do withdraw your plea you're on fair notice that anything

22    you've said to the government can be used against you.  Your

23    cooperation is set forth here in paragraph six.  So far, Ms.

24    McAdoo, do you agree?

25           MS. McADOO:  So far we're in agreement.

1           THE COURT:  Mr. Barr?

2           MR. BARR:  Yes, your Honor.

3           THE COURT:  Cooperation is you have to testify

4    truthfully and you have to tell them everything you know and you

5    can't withhold any information and you have to be available and

6    give them a polygraph and make a full and complete accounting.

7    At that point they can decide that departure can maybe determine

8    whether you've provided substantial assistance.  Whether or not

9    you have is their -- the issue rests solely with the United

10   States Attorney's Office.  You understand that the failure to

11   file is substantial assistance departure motion under 5K is not

12   a ground for you to withdrew your plea.

13           Again, they've talked about restitution, that you're

14   agreeing to make it.  Under the law basically restitution

15   becomes a condition of supervised release and they can go after

16   you, it's a judgment, and they can go after you basically for

17   pretty much forever, for the money that is imposed as

18   restitution.

19           With respect to information that you're providing

20   during the course of your cooperation, they're not going to use

21   that against you unless you withdraw your plea.  Then they will

22   use it against you, but information, not information provided

23   here today but other kind of information, won't be used against

24   you as long as they knew about it before, or if they want to

25   prosecute you for perjury or false statements or if you breach

1   this agreement.  But that has to do with information provided

2   during the course of cooperation.  They're not going to seek to

3   change your conditions of release, but obviously the final

4   decision on whether you go to jail or not today or some other

5   day rests solely with me.  If you breach this agreement you

6   can't withdraw your plea.  If you don't like the sentence the

7   Court imposes, as long as I'm within the guideline range and I

8   tell you, you can't withdraw your plea.  You are stuck with the

9   plea agreement, but the government will be excused from all

10  their obligations if in fact you breach this agreement, and all

11  the government has to do to show a breach is show it by a

12  preponderance of the evidence.

13          This paragraph here on page seven is the one we talked

14  about before.  If a plea is, the plea, guilty plea, is later

15  withdrawn, everything you say here can be used against you and

16  they'll have a full case based on your statement only.  Nothing

17  in the agreement allows you to commit perjury, false statements,

18  etcetera.  You're not going to be, in the event that something

19  falls apart and your plea doesn't go through, you can't raise a

20  defense of statute of limitations.

21          You waive any right to want a DNA test.

22          Now, very important that you understand that, have any

23  promises been made to you other than those set forth in this

24  agreement that we've just gone over?

25          DEFENDANT A. BOLING:  No, your Honor.

```
 1              THE COURT:  Has anybody made any guarantees or
 2    promises to you about what sentence the Court will impose other
 3    than I will stay within the guidelines defined here, and if I'm
 4    not I'm going to give you notice of it?
 5              DEFENDANT A. BOLING:  No, your Honor.
 6              THE COURT:  I'm sorry?
 7              DEFENDANT A. BOLING:  No, your Honor.
 8              THE COURT:  Has anyone forced or threatened you to
 9    enter into this plea agreement?
10              DEFENDANT A. BOLING:  No, your Honor.
11              THE COURT:  Do you have any questions about it?
12              DEFENDANT A. BOLING:  No.
13              THE COURT:  Do you understand what's in here?
14              DEFENDANT A. BOLING:  Yes, I do.
15              THE COURT:  Have you had enough time to talk to your
16    counsel about it?
17              DEFENDANT A. BOLING:  Yes, several times now.  Thank
18    you.
19              THE COURT:  The Court's going to ask you at this point
20    in time, how do you wish to plead to the information that
21    charges one count of misprison of a felony in violation of 18
22    USC section 4?
23              DEFENDANT A. BOLING:  Guilty, your Honor.
24              THE COURT:  The Court finds the defendant understands
25    the proceeding, has voluntarily waived her rights, there's a
```

1  factual basis for the plea, and the Court retains jurisdiction

2  to accept it at the time, and remind me to do it formally, at

3  the time of sentencing subject to seeing a PSI.  All right.

4          Mr. Boling?

5          DEFENDANT A. BOLING:  Thank you.

6          THE COURT:  Mr. Boling, we've talked about your

7  Constitutional rights, we've talked about the statement of

8  offense.  I'd like to look at your plea agreement.  Many things

9  I've just spoken to Ms. Boling about would apply here, but not

10 completely.  We've already -- I've already explained to you here

11 we've basically -- you come to an agreement about the offense

12 level.  Assuming you qualify for acceptance of responsibility

13 there's a three point reduction.  You will not if you commit any

14 further offenses, if you lie to probation or to the Court or in

15 any way obstruct justice.  Assuming you're at a level 22, I want

16 you to understand that the criminal history here is really

17 debated, and, as I said, the range goes from 50-some months to a

18 hundred-some months, and if it's determined and the Court

19 determines after we have a presentence report that you fall

20 within the level six as Mr. Chawla indicates, you can't withdraw

21 the plea.  The only time you can withdraw the plea is if at the

22 time of sentence I say I'm not buying into a sentence of 22.  Do

23 you understand that?

24         DEFENDANT R. BOLING:  Yes, your Honor.

25         THE COURT:  So for you it is a -- you cannot rely on

41

```
 1    what Mr. Abbenante has predicted about your criminal history.
 2    There is no guarantees about it.  Frankly, it's a fairly open
 3    field if you're going all the way from a criminal history three,
 4    four, five or six, so you can't rely on any representation with
 5    respect to criminal history.  Do you understand that?
 6              DEFENDANT R. BOLING:  Yes, your Honor.
 7              THE COURT:  All right.  You've had a chance to go over
 8    this with your counsel, I am sure.
 9              DEFENDANT R. BOLING:  Yes, your Honor.
10              THE COURT:  And you understand under this agreement
11    should you withdraw your plea the statements made here today can
12    be used against you?
13              DEFENDANT R. BOLING:  Yes, your Honor.
14              THE COURT:  You're agreeing to plead to two counts.
15    Count one is what is called a 371 conspiracy.  Count two is a
16    securities fraud violation substantial offense.  As to the 371,
17    Mr. Mills, this applies to you as well, the maximum penalty is
18    five years imprisonment, a fine of $250,000 or a fine of twice
19    the pecuniary gain or loss pursuant to Section 318 USC, a
20    hundred dollars special assessment, a three-year term of
21    supervised release, order of restitution and an obligation to
22    pay any applicable interest or penalties or fines or restitution
23    not timely made, and, as I said before, when you're on
24    supervised release if you violate the conditions you can be sent
25    to jail.  The securities fraud both of you are pleading to
```

1    carries a maximum of twenty years imprisonment, and

2    theoretically I believe the Court can go consecutive should it

3    want, so we're talking maximum here of five plus twenty.  That's

4    inconsistent with the guidelines, but you just have to

5    understand that I'm obligated to tell you under the law what the

6    absolute maximum is.  Securities fraud carries a fine of five

7    million or a fine of twice the pecuniary gain or loss pursuant

8    to 18 USC 3571(d) and a hundred dollar special assessment for

9    each count for each felony, two hundred dollars total, and an

10   obligation to pay interest or penalties on fines or restitution.

11            You have to both understand, Mr. Mills and Mr. Boling,

12   the court will impose its mandatory restitution.  The

13   restitutionary amount cannot be determined now.  It can also

14   impose a fine, if you have a financial means to pay that fine.

15   It's not required to do so, and there is, as I said, special

16   assessment of a hundred each.  Do you, Mr. Boling, understand

17   those maximum penalties?

18            DEFENDANT R. BOLING:  Yes, your Honor, I do.

19            THE COURT:  Do you, Mr. Mills?

20            DEFENDANT MILLS:  Yes, your Honor.

21            THE COURT:  Now, Mr. Boling, you've signed this

22   statement of offense and indicated it's factually correct.

23   We've gone over the fact that this is for you and not Mr. Mills,

24   but for Mr. Boling.  This is an 11 (c)(1)(c), and assuming

25   credit for acceptance of responsibility, you're looking at an

1    offense level of 22. You've agreed to a loss of more than

2    $400,000. Under this agreement you have no ability to argue for

3    any kinds of departures outside the guideline range, and we

4    can't tell you what that range is because we don't know, and

5    what your criminal history is. You can't ask for departures.

6    You can't quibble with the loss of more than four hundred

7    thousand. The only way that you can get any relief from

8    whatever we determine the appropriate guideline range is is

9    pursuant to a motion for substantial assistance under 5K. What

10   I said to Ms. Boling is true for you as well: Whether you get

11   such a motion from the government is within their discretion. I

12   have no power over it. I don't review it, and I'm not bound by

13   it. I can depart or go below the range if I want, but I can't

14   do it without the motion. Is that clear?

15           DEFENDANT R. BOLING: Yes, your Honor.

16           THE COURT: Is the same true in Mr. Mills' agreement,

17   there is a possibility of cooperation?

18           MR. SWITZER: It is, your Honor.

19           THE COURT: Mr. Mills, you have to understand that I

20   have no ability to review that. The government decides whether

21   to file it. If they don't file it you can't withdraw your plea,

22   that's true for both of you. I'm not bound by it. I can go

23   below the guideline if I want to, but I'm not bound by it, and

24   you can't withdraw your plea if they don't file such a motion.

25   Okay.

44

1          Now, it says, Mr. Boling, here on page four that I
2    will tell you at the time of the plea, I mean the sentence, if
3    I'm going to accept the guideline offense level of 22.  If I
4    don't want to accept it, if I'm going to go higher I'll tell you
5    and you have the opportunity to reject the plea and withdraw the
6    plea, or if you want you can go ahead with whatever disposition
7    I'm setting out for you.  But if you choose to go forward your
8    statements in the statement of offense can be used against you
9    to make a case.  Do you understand that?
10          DEFENDANT R. BOLING:  Yes, your Honor.
11          THE COURT:  It also provides on page four what you
12   have to do to cooperate.  Same things that I told, and I'll tell
13   Mr. Mills as well, that you have to provide truthful, complete
14   testimony.  You can't provide half truths.  You got to be able
15   for interviews and you got to cooperate, give a polygraph if
16   asked, go to the grand jury or testify, provide a complete
17   accounting of all your assets.  Paragraph seven tells you that
18   it will be up to the sole discretion of the United States
19   attorney whether or not you have provided substantial
20   assistance, and there is no such thing as a downward departure
21   based on a 5K without them moving.  The same thing we talked
22   about applies to all three of you about restitution.  It's
23   mandatory.  How much it is we don't know at this time, and the
24   Court apparently retains discretion exactly whether to apportion
25   it or make it joint and several.  It could be that you end up

45

1   paying the whole thing if no one else has any money and you're

2   the one that has something.  They agree that the information you

3   provide during the course of cooperation will not be used

4   against you.  If you're the source of the information and it

5   wasn't otherwise known by the U.S., they can use the information

6   in apparently false statement prosecution.  They're not asking

7   to change your condition of release pending sentence, but the

8   Court has the power to lock you up now if I want.  Finally, if

9   you breach the agreement and they prove that by a preponderance

10  of the evidence, the government is free of all its obligations

11  under this plea but you are stuck with it.  You can not withdraw

12  your plea.  They can prosecute you.  They can use your

13  statements here today.  If they go forward under those

14  conditions, if you withdraw your plea under any conditions for

15  whatever reason, including under 11 (c)(1)(c), they can use your

16  statement here today and make a case against you.  If it so

17  happens that they end up having to prosecute you, you cannot

18  raise any statute of limitations offense.  You cannot ask for

19  DNA testing of any evidence.  Is this, sir, the complete

20  understanding and all the promises you're aware of, what's in

21  this written agreement between you and the government?

22              DEFENDANT R. BOLING:  Yes, it is, your Honor.

23              THE COURT:  Has anybody made you any other promises or

24  representations that are not included in this agreement?

25              DEFENDANT R. BOLING:  No, your Honor.

```
 1              THE COURT:  Has anyone in any way forced or threatened
 2     you to enter into a plea?
 3              DEFENDANT R. BOLING:  No, your Honor.
 4              THE COURT:  Has anyone given you any promises or
 5     guarantees about what sentence you'll get, other than I will
 6     tell you what offense level I will choose, but otherwise has
 7     anybody given you any promises or guarantees regarding the
 8     sentencing?
 9              DEFENDANT R. BOLING:  No, they have not, your Honor.
10              THE COURT:  Do you have any questions about this plea
11     agreement?
12              DEFENDANT R. BOLING:  No, I don't, your Honor.
13              THE COURT:  Anything for you, Mr. Abbenante?
14              MR. ABBENANTE:  No, your Honor.
15              THE COURT:  I think, just to be clear, Ms. Boling, I
16     want to make sure I ask you this:  Are there any promises or any
17     guarantees other than what's in there, whether it be from your
18     lawyer or the police or the prosecutors, that cause you to --
19     any other promises other than what's in your specific written
20     plea agreement?
21              DEFENDANT A. BOLING:  No, your Honor.
22              THE COURT:  Mr. Boling, how do you wish to plead first
23     to the count of conspiracy under 371?
24              DEFENDANT R. BOLING:  Guilty, your Honor.
25              THE COURT:  How do you wish to plead to the
```

1   substantive securities count, count two, is it?  Yes, count two,

2   how do you wish to plead?

3           DEFENDANT R. BOLING:  Guilty, your Honor.

4           THE COURT:  Again, the Court finds the defendant

5   understand the proceeding, has voluntarily waived his right,

6   there's a factual basis for the plea, the Court will consider

7   accepting the plea at the time when we get the presentence

8   report at the time of sentencing.

9           Is there anything further for you, Mr. Abbenante?

10          MR. ABBENANTE:  Not with respect to the plea, your

11  Honor, but I want to speak to just the modification of the

12  release, assuming you allow the release conditions.

13          THE COURT:  Okay, but let us finish with Mr. Mills, if

14  you don't mind.  Mr. Mills' plea is slightly different, but a

15  lot of it is the same.  I'll try not to repeat myself.  I've

16  given you the maximum possible penalties for count one of the

17  indictment, which is the 371, and the count two of the

18  securities fraud.  You understand those penalties, sir?

19          DEFENDANT MILLS:  Yes, your Honor.

20          THE COURT:  You've had a chance to go over this with

21  your counsel?

22          DEFENDANT MILLS:  Yes, your Honor.

23          THE COURT:  You understand your plea?

24          DEFENDANT MILLS:  Yes, your Honor.

25          THE COURT:  And it also says to you that again I

1    remind you that there's a three-year supervised release.  Should

2    you violate it in any way you could be sent back to jail.  The

3    restitution, again, it's mandatory.  We don't know the amount of

4    -- I can't tell you the amount.  You have agreed to the

5    statement of the offense, you read that and signed it, correct?

6            DEFENDANT MILLS:  Yes, your Honor.

7            THE COURT:  The guideline range that they've

8    determined here is a based on a loss of more than a million and

9    offense level of 26.  They believe you have a criminal history

10   of one.  Assuming that's true, and there are no guarantees and

11   you can't withdraw the plea if it doesn't work out, it turns out

12   you have a prior record.  We don't know about it here today,

13   this could be wrong, but the best we can tell you at least based

14   on what we know now is 63 to 78 months is the range.  The fine

15   range, if you have the financial means, is $12,500 to $125,000.

16   That's the range.  That's assuming an offense level of 26.  Do

17   you understand that?

18           DEFENDANT MILLS:  Yes, your Honor.

19           THE COURT:  And you understand if it turns out that

20   these don't work out to be the range, this doesn't work out to

21   be the range, or I want to go above the range, you have no

22   ability to withdrew your plea?

23           DEFENDANT MILLS:  Yes, your Honor.

24           THE COURT:  You understand it's not the same as

25   theirs?

1          DEFENDANT MILLS:  Yes, your Honor, I do.

2          THE COURT:  You're stuck with your plea, and the only

3     right of appeal you have basically is if I go above the

4     statutory maximum.  I can go up or down under the law now for

5     guideline purposes, but if I go up you don't have any ability to

6     withdraw this plea.  Is that clear?

7          DEFENDANT MILLS:  Yes, your Honor.

8          THE COURT:  The parties are agreeing they will not

9     seek to suggest to me an upward or downward departure.  Other

10    than your counsel retains the right to argue to me that I should

11    go downward based on a 5K motion, if the government files this,

12    again, you should understand that the government is not required

13    to.  It's within their discretion.  If you do provide

14    substantial assistance and they do file a 5K motion I am not

15    bound by it, but I cannot downwardly depart without it.  Is that

16    clear?

17         DEFENDANT MILLS:  Yes, your Honor.

18         THE COURT:  And it says here -- this is very important

19    -- if you don't like the sentence you can't withdraw the plea.

20    You can't withdraw the plea if they don't file a motion under

21    5K.  And it says the Court's not bound by this plea agreement

22    because in is not 11(c)(1)(c).  I can consider any guideline

23    adjustment upward downward that I want.  The guidelines are

24    important.  I start with figuring out what the guideline range

25    is, but I'm not bound by it.  I'm only bound by the statutory

1    maximum.  It is understood that you don't have the right to

2    withdraw your guilty plea should I impose a sentence out of the

3    guideline range.  Do you understand that?

4              DEFENDANT MILLS:  Yes, your Honor.

5              THE COURT:  And also we have the same discussion about

6    restitution.  You also will have to pay two hundred dollars at

7    the time of sentencing special assessment.  You will not file a

8    direct appeal of any sentence within or below the stipulated

9    guideline range set above, and the government will not appeal

10   any sentence.  I'm sorry, I may have misinformed you about this.

11   His appellate rights, he can file if I go outside the guideline

12   range.

13             MR. BARR:  For appeal, yes.

14             THE COURT:  All right.  Please, I made a mistake.

15   Your appellate rights seem to be slightly broader, is that

16   correct, than the other two?

17             MR. BARR:  Correct.

18             THE COURT:  The other two can only appeal if I impose

19   an unlawful sentence.  If your instance you could appeal if I

20   decide to go above the applicable guideline range.

21             MR. SWITZER:  Yes, your Honor.

22             THE COURT:  It also says if you provide information

23   during cooperation it won't be used against you unless the

24   government knew about it from independent sources or prosecuting

25   you for perjury or you breach this agreement.  The same thing I

```
 1    said before.  They're not going to seek to change your
 2    conditions of release, but I retain the authority to lock you up
 3    should I choose.  A breach would cause you to, one, the
 4    government would be free of all its obligations here.  They
 5    would only have to prove a breach by a preponderance of the
 6    evidence, and if there's a breach you cannot withdrew your plea,
 7    you're stuck with it, and if you do withdraw your plea they can
 8    make a case based on everything you've said here today or
 9    anything, any other admissions.  In the event there should be a
10    prosecution you cannot raise a statute of limitations.  You are
11    giving up the right to ask for any DNA testing for any physical
12    evidence.  It says here, Mr. Mills, this is the complete
13    understanding of your agreement with the government.  Have there
14    been any other promises or guarantees made to you other than
15    what's in this agreement?
16              DEFENDANT MILLS:  No, your Honor.
17              THE COURT:  Has anyone given you any promises or
18    guarantees regarding the sentence in this case?
19              DEFENDANT MILLS:  No, your Honor.
20              THE COURT:  Has anyone forced you or coerced you to
21    enter into this plea agreement?
22              DEFENDANT MILLS:  No.
23              THE COURT:  I failed to tell all three that that
24    agreement only binds the United States Attorney's Office for the
25    District of Columbia.  It does not bind any civil authorities or
```

1    tax authorities or any other United States Attorney's Office.

2    You understand that, Ms. Boling?

3             DEFENDANT A. BOLING:  Yes, your Honor.

4             THE COURT:  Mr. Boling?

5             DEFENDANT R. BOLING:  Yes, your Honor.

6             THE COURT:  Mr. Mills?

7             DEFENDANT R. BOLING:  Yes, your Honor.

8             THE COURT:  All right.  Sir, I'm sorry, I don't recall

9    if I asked:  Has anyone coerced or forced you in any way to

10    enter into a plea?

11             DEFENDANT MILLS:  No, your Honor.

12             THE COURT:  Do you have any questions about this?

13             DEFENDANT MILLS:  No, your Honor.

14             THE COURT:  You understand the agreement?

15             DEFENDANT MILLS:  Yes, your Honor.

16             THE COURT:  And you're entering it, you're entering

17    into it of your own free will?

18             DEFENDANT MILLS:  Yes, your Honor.

19             THE COURT:  Mr. Switzer, anything further for you?

20             MR. SWITZER:  No, your Honor.

21             THE COURT:  For the government?

22             MR. BARR:  Nothing further, your Honor.

23             THE COURT:  At this time, sir, how do you wish to

24    plead to the 371 conspiracy?

25             DEFENDANT MILLS:  Guilty, your Honor.

1          THE COURT:  And as to the violation of securities

2    fraud, how do you wish to plead?

3          DEFENDANT MILLS:  Guilty, your Honor.

4          THE COURT:  The Court finds the defendant understands

5    the proceedings, has voluntarily waived its rights, and there's

6    a factual basis for the plea.  The Court reserves the right to

7    accept it at the time of sentencing after seeing the pre-

8    sentence report.

9          Have these people, all three of them, turned over

10   their passports?

11         DEFENDANT R. BOLING:  I don't have one.

12         DEFENDANT A. BOLING:  Yes.

13         DEFENDANT MILLS:  You have one?

14         MR. BARR:  Mr. Mills' plea was not a C(1)C.  You could

15   accept it today if you chose to.

16         THE COURT:  My mistake.  I am accepting it today.  Mr.

17   Mills has accepted.  He can't withdraw it now.  It's too late.

18   I'm sorry, I misspoke.  You're right.  We don't have to wait to

19   accept your plea because you have no right to withdraw it if I

20   go outside the guidelines.  Can you have a seat, please?  Mr.

21   Barr, you're comfortable with these folks being free?

22         MR. BARR:  Yes, your Honor, I am.

23         THE COURT:  Are you sure?  What are their conditions

24   now?

25         COURTROOM DEPUTY:  This is Mr. Boling's.

54

1          THE COURT:  Is he in contact with Pretrial in some way

2     or another?

3          COURTROOM DEPUTY:  Yes.

4          THE COURT:  By phone?

5          COURT CLERK:  Weekly.

6          THE COURT:  Is that true for all three?

7          COURT CLERK:  I don't know, Judge.  I'll give you all

8     three.

9          MR. BARR:  Here is Mr. Mills' and Ms. Boling's.

10          MR. ABBENANTE:  Your Honor, he has been in compliance

11     with Pretrial.  I think there was a $75,000 unsecured personal

12     appearance bond.

13          THE COURT:  For just him or both?

14          MR. ABBENANTE:  I don't remember for Ms. Boling, your

15     Honor.

16          COURTROOM DEPUTY:  It was just Mr. Boling.

17          MR. ABBENANTE:  I think it was just Mr. Boling.

18          COURTROOM DEPUTY:  What about for Mr. Mills?

19          THE COURT:  Yes, what about it?

20          MR. ABBENANTE:  Your Honor, the only amendment we

21     would like to ask the Court is that your Honor only allow Mr.

22     Boling to come from Florida to Washington to travel, but his

23     business dealings right now, he's dealing with hurricane

24     businesses that deal with fortifying houses and things of that

25     nature and he's been traveling.  Your Honor allowed him to

1    travel during the course of this case.  I think it was to

2    Mississippi.  What we would like to do, your Honor, is allow, if

3    your Honor would lift the travel restriction to allow him to

4    travel within the United States upon notice to Pretrial of where

5    he's going and then his return, and then I'll notify Mr. Barr in

6    turn.  It's just for his personal businesses.

7            THE COURT:  For personal business within the

8    Continental U.S., he's not going outside the Continental U.S.?

9            MR. ABBENANTE:  No, your Honor.

10           THE COURT:  Do you have any problem?

11           MR. BARR:  We didn't have any objection, but I would

12   ask that Mr. Boling provide notice and get permission from

13   probation, in other words, have probation say okay.

14           THE COURT:  Well, it's Pretrial Services.

15           MR. BARR:  I'm sorry.  Pretrial.

16           THE COURT:  That's fine.

17           MR. ABBENANTE:  Well, your Honor, the only problem

18   with that is I don't want to be in a situation where Pretrial is

19   going to call me and say, well, we're not going to give it to

20   him unless the judge approves it, because sometimes these trips

21   are at the last minute.  He has been in complete compliance with

22   his conditions.  I would just ask the Court to allow him to

23   notify Pretrial of his travel itinerary and report to them when

24   he gets back.  I mean, that's sufficient.

25           THE COURT:  I mean, if I'm out of town they will call

1    me.

2              MR. BARR:  They will.  How about if he notifies them

3    by fax in writing so that there's some record of it?

4              THE COURT:  Yes.  He's going to have to give notice to

5    Pretrial Services for any travel other than to DC for court.

6              MR. ABBENANTE:  Right.

7              THE COURT:  Ahead of time, and they should cc us.  We

8    want to know about it.

9              MR. ABBENANTE:  That's fine.

10             THE COURT:  That's fine.  We will allow him to travel

11   outside.  Right now he's traveling in the middle and southern

12   District of Florida and DC.  He can travel within the

13   Continental U.S. if he gives at least 24 hours' notice to

14   Pretrial Services of where he's going, how long he's going, and

15   what his itinerary is.

16             MR. ABBENANTE:  Fine.

17             THE COURT:  Is that clear?

18             MR. ABBENANTE:  Thank you, your Honor.

19             THE COURT:  What are we doing in terms of sentencing?

20             MR. BARR:  Your Honor, the government would like to

21   set a status for October so that the government will have an

22   opportunity to evaluate.

23             THE COURT:  Okay.  You don't want to send this to --

24   you want to give the people at probation ample opportunity here.

25   I mean, this is not one of the -- it's out of jurisdiction.  It

1    will take a long time, so I don't know whether you're

2    anticipating we can refer them for a presentence report.  Set

3    them down for October and people can give me notice if we're

4    going forward with the sentencing then, or I just want to give

5    --

6            MR. BARR:  What I propose is that we have a controlled

7    status date in October where we then discuss a sentencing date

8    which will allow the United States to evaluate the efficacy of

9    having a sentencing date sooner.

10           THE COURT:  Sooner than what?  I mean, if you want

11   sentencing and we don't do anything to probation, October 18 or

12   so rolls around they'll need about ninety days at least.

13           MR. BARR:  We understand that, your Honor.

14           THE COURT:  We can come back on the 18th of October.

15           COURTROOM DEPUTY:  Just one controlled status?

16           THE COURT:  I guess so.

17           COURTROOM DEPUTY:  Okay.

18           MR. SWITZER:  I beg your pardon, your Honor.

19           THE COURT:  October 18.

20           MR. SWITZER:  For?

21           THE COURT:  Just a status.

22           MR. SWITZER:  Yes, your Honor.

23           THE COURT:  They're all required to be here unless the

24   government and you all come up with something else.  What time?

25   Is it better to go in the afternoon or like two o'clock?

1          MR. ABBENANTE:  Well, your Honor, can I just address

2     that issue?  If we're coming back on the 18th and the government

3     is indicating to the Court if your Honor just wants to know the

4     status of what's going on and they're continuing in their

5     cooperation, do they need to be here for that?

6          THE COURT:  I don't want to, frankly, when you get

7     close to the time, if the point is to just say I want to

8     continue it or, you, Judge, referred it to probation, "no" is

9     the answer.  We'll cancel the whole status, but right now we got

10    one set for two o'clock on the 18th.  All right.

11         MR. ABBENANTE:  We're going to vacate the jury trial.

12         COURTROOM DEPUTY:  All right.  Done.

13         THE COURT:  They're going to be on the same conditions

14    subject to the modification as to Mr. Boling, and they're

15    required at the moment to be back at the 18th and keep in touch

16    with Pretrial, but I'm not referring it at this point to

17    probation.  Is that all right?

18         MR. BARR:  That's all right, your Honor.

19         THE COURT:  All right.  Okay.

20    Thank you, counsel.

21         MR. BARR:  Thank you, your Honor.

22         THE COURT:  All right.  Thanks.

23         COURTROOM DEPUTY:  Okay.  We're still keeping the

24    seventy-five thousand unsecured bond, we're still reporting to

25    Pretrial Services at this number by phone.  The only thing that

1  we modified to allow them of your travel within the USA with a

2  24-hour notice of your itinerary, and also let the U.S.

3  Attorney's Office know.

4          DEFENDANT R. BOLING:  Yes, ma'am.

5          COURTROOM DEPUTY:  If you're rearrested you will be

6  held without bond.  Do you understand?

7          DEFENDANT R. BOLING:  Yes, ma'am.

8          COURTROOM DEPUTY:  All right.  I need you to sign your

9  John Hancock.  Raise your right hand.  Do you solemnly swear

10  that you will abide by the conditions of your release, so help

11  you God?

12          DEFENDANT R. BOLING:  Yes, ma'am.

13          COURTROOM DEPUTY:  Okay.

14          (Proceedings concluded at about 1:16 p.m.)

15                    *   *   *   *   *   *

16

17

18

19

20

21

22

23

24

25

I N D E X


WITNESSES

None.



EXHIBITS

None.

CERTIFICATE


          I, JACQUELINE M. SULLIVAN, Official Court
Reporter, certify that the foregoing pages are a correct
transcript from the record of proceedings in the above-entitled
matter.




          *Jacqueline M Sullivan*
          JACQUELINE M. SULLIVAN